Henry Clay Greenberg, J.
The defendant stands indicted of the crimes of first and second degree perjury under a two-count indictment charging, respectively, that on October 2,1958, while appearing as a witness before the Grand Jury of the Extraordinary Term of the Supreme Court, Ulster County, he willfully and falsely testified under oath concerning a number of checks and the proceeds thereof, totaling approximately $19,000, which had been received by him during the years 1951 to 1956, and concerning a second occasion on October 27, 1958, when he gave contradictory statements concerning the same matters.
*414 At that time, the Grand Jury was in the throes of conducting an investigation into corruption and ‘ ‘ kickbacks ’ ’ in connection with the sale of snow-removal equipment worth $500,000, to the County of Ulster and other governmental units, by a distributor’s agent in Troy, New York, one Frank Buckley, since deceased. Buckley’s books and records had been examined and revealed an amount approximately 20% of such sales, i.e., $100,000, was reflected by checks made and drawn to certain individuals, including defendant.
The probing searchlight was then focused on the defendant Ashby, who was called upon to explain to the Grand Jury his receipt of the $19,000 worth of checks emanating from Buckley.
On October 2, 1958, defendant appeared before the Grand Jury . He explained the receipt of these moneys as Ms lawful commissions for services rendered to Buckley, to wit, furnishing leads for these equipment sales, much like a steady and hustling bird-dog, notwithstanding when pressed he was unable to describe the details of any one such sale or lead. Nevertheless, he protested that he was ‘ ‘ giving the truth here ’ ’ and ‘ ‘ trying to tell [you] the truth ’ ’ concerning his arrangements with Buckley.
On October 27, 1958, defendant appeared before the same Grand Jury, having made a request to do so on October 21,1958, to the Special. Assistant Attorney-General in charge of this investigation, which apparently was granted. He was again questioned concerning these same sums of money he received from Buckley. He freely admitted that his prior testimony of October 2, 1958, was completely false, willfully concocted and that he knew it to be false when he previously testified before the Grand Jury. His new testimony was diametrically opposite to and contradicted his former testimony in many respects.
Ashby now asserted that he had never been employed by the distributor or by Buckley to “ bird-dog ” or locate any new business. He claimed that the money he received from Buckley was not compensation but that he had merely been a conduit and had returned the proceeds of the checks to Buckley at the request of a former political county chairman, receiving a paltry sum as a gratuity for this service and as reimbursement to him for the taxes on the increased income which he falsely reported on his tax returns. In essence, the defendant repudiated his palpably false testimony made earlier that month and related a narrative containing a different explanation of his conduct under inquiry. The Grand Jury had before it evidence tending to indicate that both versions, or portions of them, were false and contradictory.
*415 Defendant brings this motion to dismiss the indictment, challenging its validity on two grounds:
(1) that the evidence adduced before the Grand Jury was insufficient in law; and
(2) that the defendant had recanted by his subsequent appearance and testimony on October 27, 1958, his false testimony initially given before the Grand Jury on October 2, 1958, thereby absolving or purging himself of his self-confessed perjury committed at the earlier date.
In support of both branches of this motion, defendant confidently relies on the doctrine of recantation as enunciated in People v. Gillette (126 App. Div. 665) and People v. Esaugi (2 N Y 2d 439).
Defendant argues that these cases stand for the rule that recantation of prior false testimony — even where intentionally made — is a bar to a perjury prosecution based on such prior testimony. This is the only legal contention urged upon this court by the defendant.
In opposition to the motion, the prosecutor contends that on its face the indictment was sufficient in law to sustain a conviction for perjury by reason of the defendant’s admission in his October 27, 1958 testimony that his October 2, 1958 answers were knowingly and willfully false. He also argues that the principle of recantation is not applicable to the facts in this case, and accordingly is here not available to the defendant.
In disposing of the defendant’s first point — as to the insufficiency in law of the evidence presented to. the Grand Jury — it has been satisfactorily established beyond peradventure of a doubt that on October 2,1958, the defendant knowingly testified falsely before the Grand Jury concerning certain moneys he received from Buckley. The defendant does not deny the falsity of his October 2 testimony; rather it is manifest and he concedes it firstly in his letter to the foreman of the Grand Jury, dated October 23, 1958 (attached to the moving papers), again in the office of the Special Assistant Attorney-General, and lastly, by his testimony of October 27, 1958, before the Grand Jury.
Under those circumstances, I would have no alternative but to reject the defendant’s first ground for dismissal. (Code Crim. Pro., § 251; Penal Law, § 1627; People v. Donahue, 309 N. Y. 6; People v. Tillman, 63 Misc. 461, revd. 139 App. Div. 572, affd. 201 N. Y. 598; People v. Hegeman, 57 Misc. 295, 301; see, also, People v. Sweeney, 213 N. Y. 37; People v. Glen, 173 N. Y. 395.)
*416 The second contention of recantation, strongly advanced by defendant, requires a more extensive examination and careful analysis of legal principles to determine whether the indictment should be dismissed as a matter of lato on the theory that the indictment was found in disregard of defendant’s purported recantation.
One of the landmark decisions construing the doctrine of recantation was People v. Gillette (126 App. Div. 665, supra) where Judge McLaughlin, later of the Court of Appeals, held that Gillette’s corrected testimony could not be perjury and followed a rule founded in Anglo-Saxon law, at least two centuries old (cf. King v. Jones, 1 Peake N. P. 51, 53 [1791], citing King v. Carr, 1 Sid. 418 [1669]).
There the court had reversed a conviction for perjury, placing great emphasis upon the ascertainment of truth as a worthy and ultimate object of justice, with which no court could reasonably disagree. Gillette had initially given misleading answers to the Grand Jury relative to the ownership of a bank account, but immediately on the very same occasion and before leaving the witness stand, had told the whole truth concerning the account and the source from which the funds came.
The facts in the instant case can hardly be viewed as coming within the purview of such a holding. Primarily, the defendant here argues and assumes that his October 27 version was the truth and the whole truth. On the contrary, the testimony before the Grand Jury indicated that his second version was untrue at least in several material aspects. Moreover, the Grand Jury, in its second count of the indictment, demonstrated its nonacceptance of the defendant’s October 27 explanation of his conduct, and the conclusion becomes inescapable that the Grand Jury positively rejected various portions of his second explanation.
It is not at all inconceivable that defendant attempted to explain away his utterly false version of October 2, but, in so doing, made many other perjurious statements in his October 27 explanation and purported recantation (cf. People v. Samuels, 284 N. Y. 410; People v. Hirsh, 283 N. Y. 638).
But even assuming, arguendo, that the defendant did tell the whole truth on October 27, 1958, I do not find that it was promptly done before the body conducting the inquiry. None of the cases cited by defendant in this respect in his well-presented brief, nor the history of this ancient rule, suggests any broad sweep as would permit the application of the recantation rule on these facts. The defendant’s 19-day delay in making up his mind to recant must be deemed fatal to his *417 claimed exoneration. No other holding could be otherwise justified.
In so finding, I recognize the historic and sound recantation rule as predicated upon a high public purpose and policy. Further, I do not find any suggestion in the Gillette case (126 App. Div. 665, supra) that there are no limitations to circumscribe its application, which the defendant has erroneously assumed is controlling.
This view is reinforced by a recent case on the very subject before our Court of Appeals. In People v. Ezaugi (2 N Y 2d 439, supra), the majority of the court expressly held that a purported recantation two days later was ineffective and inapplicable. Judge Dye wrote (p. 443): “Accordingly, we hold that recantation as a defense is primarily designed to correct knowingly false testimony only if and when it is done promptly before the body conducting the inquiry has been deceived or mislead to the harm and prejudice of its investigation, and when no reasonable likelihood exists that the witness has learned that his perjury is known or may become known to the authorities. Thus, as a practical matter, the use of recantation as a defense should always depend on the circumstances of the given case (Llanos-Senarillos v. United States, 177 F. 2d 164; United States v. Norris, 300 U. S. 564; Penal Law, § 1620).”
In the case at bar, defendant’s recantation occurred on October 27, 1958, 25 days later, after he had been repeatedly warned of his perjurious testimony on October 2, 1958, but had nevertheless persisted in this conduct. There is nothing in the Emugi case (supra) that can be viewed as casting any doubt upon limiting the application of this rule to the circumstances.
Undoubtedly, in the interim, defendant must have discovered and become convinced that the special prosecutor and the Grand Jury knew all along the true nature of the $19,000 checks and that the false testimony on October 2 had not deceived anybody. Consequently, defendant had orally and belatedly sought permission, with the aid of counsel, to reappear before the Grand Jury on October 21, and did so on October 27.
The penetrating analysis of Judge Dye in the Ezaugi case (supra, p. 444) is equally applicable here: “ Unlike the Gillette case (126 App. Div. 665, supra), the correction came several days later and this only because he became convinced that the People had incontrovertible proof of his perjury. It was not a demonstration of penitence to purge the torments of a guilty conscience, but a calculated effort to escape the dire consequences *418 of admitted false swearing. By that time this damage was beyond repair — the Grand Jury was effectively thwarted * * *. The investigation had been frustrated by the willful act of a false witness — rhis recantation came too late.”
Therefore, based on the facts and circumstances and on reason and in consonance with the decisional law of the highest court of our State, it is clear that the defendant’s motion should be denied in all respects.
(Motion to Inspect Grand Jury Minutes.)
This motion to inspect is granted on consent of the Special Assistant Attorney-General.
The application for a stay of the trial now set for April 3, 1959, is denied with leave to the defendant to renew the motion upon a valid showing of the necessity therefor.