**UNITED STATES of America,**
Appellee,

v.

**R. Lawrence SIEGEL and Hadassah R. Shapiro, Appellants.**

**No. 109, Docket 25130.**

United States Court of Appeals
Second Circuit.

Argued Nov. 13, 1958.

Decided Feb. 17, 1959.

See also, D.C., 152 F.Supp. 370.

William G. Mulligan, New York City, for appellants.

Arthur B. Kramer, Arthur H. Christy, U. S. Atty. for the Southern Dist. of New York, New York City, for United States.

Before HAND, HINCKS and MOORE, Circuit Judges.

HAND, Circuit Judge.

This is an appeal from judgments of conviction entered by Judge McGohey upon the verdict of a jury. The indictment was in twelve counts, the 1st for a conspiracy to obstruct justice, the 2nd, 3rd, 4th, 5th and 6th for obstructing justice under § 1503 of Title 18 U.S.C., and the 7th, 8th, 9th, 10th, 11th and 12th for perjury under § 1621 of Title 18 U.S.C. The jury returned a verdict of guilty against the appellant Siegel on the 3rd, 4th and 5th counts for obstructing justice and upon four of the perjury counts, 7, 8, 9 and 10. It found a verdict against the appellant Shapiro on counts 3, 4 and 5 and on perjury counts 11 and 12. It acquitted both defendants upon the conspiracy count and on two of the obstruction counts, 2 and 6. The judge imposed upon the appellant Siegel a suspended sentence and put him on probation for a year and a day on each of the seven counts on which he was convicted, the sentences to run concurrently; in addition, he imposed a fine of $500 upon each of the four perjury counts. He suspended the imposition of sentence on the appellant Shapiro on all five of the counts on which she was convicted, and put her on probation for one year, the sentences to run concurrently. The appeal is based upon three main points: (1) that the prosecution did not establish that the testimony charged in the indictment was "material" to a proceeding pending at the time before the grand jury of the Southern District of New York; (2) that the defendants were not shown to have obstructed justice; and (3) that for seven separate reasons, stated in detail, the trial was unfair. The chief, and indeed the only important, question on this appeal is whether the testimony of the two appellants was "material" to an investigation pending before the grand jury for the Southern District of New York, instituted to examine two affidavits of one, Matusow, in which he recanted testimony that he had given on two trials in July 1952 and in January 1954. The first of these was a prosecution against Elizabeth Gurley Flynn and others for violation of the "Smith Act," 18 U.S.C. § 2385, and the second was a prosecution of one, Jencks, for filing a false affidavit. Matusow's testimony had been important in both these trials, but in January 1955 he submitted an affidavit in each case in support of an application for a new trial, in which he recanted his original testimony, adding in the Flynn case that one of the prosecutors had known that his.

testimony was false and had procured him to give it. In February 1955, the District Attorney for the Southern District of New York instituted an investigation before the grand jury, the object of which was to ascertain the truth of Matusow's recantation and of his charge against the prosecutor.

The grand jury subpoenaed Siegel, a lawyer, because it was known that Matusow had talked with him about his recantation; and the subpoena directed him to produce any documents relating to Matusow. Siegel appeared on March 3, 1955, and swore that beginning in April 1954 Matusow had had seven interviews with him, seeking his help in raising money to publish a book about his, Matusow's, career in the role of a "blacklister." Siegel testified that shortly after each interview he had dictated memoranda of the substance of the interview, which the grand jury directed him to produce. On March 17th he reappeared and presented as the original memoranda documents, at least three of which were substitutes for the originals. Before this,—on March 7th—he had brought to the District Attorney in charge of the case a "chronological" memorandum which he said contained all the information contained in the original memoranda. The District Attorney read this, but, not being satisfied, asked for the originals and it was between the 7th and the 17th that Siegel prepared the substitutes. The District Attorney, being still dissatisfied, asked for the stenographic notes from which the typed pages had been transcribed. On March 20th at Siegel's direction his stenographer, Mary Manna, changed the original stenographic notes in her books so that they should correspond with the changed memoranda put in evidence on the 17th. Some of her original pages were destroyed and some were interlined; and Siegel put these fabricated pages in evidence on March 21st. The other appellant, Shapiro, was also a member of the bar, and she was not only privy to, but actually participated in, all that Siegel did and she corroborated on the witness stand his testimony before the grand jury.

The prosecution relied especially upon the substituted memoranda—and supporting stenographic notes—purporting to state the contents of three of Siegel's seven interviews with Matusow: those of April 21, June 18 and November 3, 1954. Although the originals of these had been destroyed by the appellants, independent evidence showed that the substituted versions contained omissions. The first of these omitted to say that the interview had not ended at Siegel's office, but that Siegel and Matusow had gone together to "Blair House"—a New York restaurant—and thence to the apartment of an actress, named Swanson, where there was also present Bredin, a retired officer of the U. S. Army. The omission in the second memorandum was of a dinner, also at "Blair House," given by one, Shore, a manufacturer of "a mechanical parking device," who had made an assignment for the benefit of creditors and was "involved in a bankrupt proceeding." The omission in the third memorandum was of a statement to Siegel at his office in which Matusow had spoken of a telephone talk that he had had with Swanson while he was in Dallas, Texas. Bredin, Shore and Swanson were all clients of Siegel and his excuse for omitting all mention of their names was that he feared it would injure them in their business or personal affairs, if it should appear that they had been present at his interviews with Matusow, or that Matusow had talked with Swanson in Dallas.

 As we have said, the appeals turn upon whether it was perjury and an obstruction of justice, to fabricate the false memoranda and swear that they were complete records of the interviews. That in turn depends upon whether that testimony was "material" to the investigation under way before the grand jury as to Matusow's recantation. Matusow was at the time of his interview with Siegel trying to get a publisher for his book, and it does not appear why he ac-

companied Siegel on the occasions when Siegel saw Swanson, Bredin and Shore, or why he reported to Siegel his telephone talk with Swanson in Dallas. Conceivably the omitted passages, if followed up, by cross-examination, might have led to relevant disclosures. However, we do not rest our affirmance of the convictions upon that possibility; on the contrary we will assume, *arguendo*, that the disclosure of the omitted passages would have contributed nothing to what the grand jury was seeking. The error of the appellants' position is that they confuse the "materiality" of the question with the "materiality" of the answer, as though it was proof that the question was immaterial, if the answer would have been so. It is, however, at once apparent that this substitutes the opinion of the witness for that of the tribunal as to the "materiality" of the answer. No matter how right the witness might be in believing that the answer would not contribute to the investigation, he was bound to leave that decision to the tribunal. A question is "material," no matter what the answer may be, unless it appears by its terms that the answer cannot be "material." In the case at bar it was enough to make Siegel's testimony "material" as to the originality of the memoranda that the interviews between him and Matusow might have thrown light upon his recantation. If Siegel was right in supposing that a truthful answer could not have assisted the grand jury, no doubt it would be reasonable to temper the severity of the sentence, as Judge McGohey did in the case at bar. But the eventual impertinence of what was concealed could not excuse preventing by false testimony the grand jury from deciding that question. It is scarcely necessary to add that "materiality" is always a question for the court. Sinclair v. United States, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692; Carroll v. United States, 2 Cir., 16 F.2d 951; United States v. Alu, 2 Cir., 246 F.2d 29, 32.

The other points raised by the appellants are too trivial to require discussion.

Nothing, for instance, could be more unwarranted than the charge that Judge McGohey was unfair or partial in his conduct of the trial. On the contrary he showed the utmost concern for the rights of the appellants whose strictures display an entire misapprehension of the essentials of a judge's duties.

We have discussed only the perjury counts; but what we have said is equally applicable to the attack upon the convictions under the "obstruction" counts. Bosselman v. United States, 2 Cir., 239 F. 82; United States v. Polakoff, 2 Cir., 121 F.2d 333; Broadbent v. United States, 10 Cir., 149 F.2d 580; Catrino v. United States, 9 Cir., 176 F.2d 884.

Convictions affirmed.