**UNITED STATES of America**

v.

**Donald CRANDALL.**

**Crim. A No. 72-245.**

United States District Court,
W. D. Pennsylvania.

July 13, 1973.

Henry Barr, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Thomas Livingston, Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

Defendant was tried before this court without a jury on the last count of an original eight count indictment charging that Donald Crandall, while under oath as a witness in a proceeding before a grand jury in the Western District of Pennsylvania, on February 7, 1972, knowingly did make a false material declaration under the following circumstances. At the time, the grand jury was conducting an investigation to determine whether there were any violations of the federal conspiracy and mail fraud statutes, and it was material to the aforesaid investigation to determine the identity of any person responsible for, or connected with, an insurance claim arising out of the burglary of the Auto Spa on September 13, 1970; and it was material to the investigation to determine whether or not any person had offered or paid money to Donald Crandall for the purpose of obtaining an alteration in a police report which was subsequently used as the basis for an insurance claim.

It was stipualted that the following questions were asked and answered as indicated:

"Question. Did Colaizzi have anything to do with this insurance claim, to the best of your knowledge?

"Answer. No, I don't think so. I mean it wasn't his place of business, I didn't think he did, but I don't know if he did or not."

And later during the same grand jury session:

"Question. Did Colaizzi ever contact anybody in your police station, or on your police force, concerning this burglary?

"Answer. No—what burglary are you referring to?

"Question. The burglary at the Auto Spa on the 13th of September.

"Answer. Oh, no. We have lots of burglaries. That is why I asked.

"Question. Is there anything else you can add to help us find out what old Rick had in mind here?

"Answer. No, nothing at the present time. Well I would like to make it clear, the reason I know this Colaizzi, is, he bought my home off me. I had a home for sale back in 1969, and he bought my home. This is how come I met him. This was about the same time he went into business in our township; this is how I come to know him.

"Question. But he didn't contact you concerning this burglary at the Auto Spa?

"Answer. Not that I know of."

It was then further alleged that Donald Crandall, despite the answers given above, well knew that Charles Colaizzi did contact Donald Crandall concerning the burglary at the Auto Spa. These allegedly false answers were then claimed to be a violation of 18 U.S.C. Section 1623.[1]

---

1. Section 1623. False declaration before grand jury or court.

(a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

This court having fully considered the evidence submitted and after consideration of all of the matters brought to its attention, now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The federal grand jury was reconvened on February 7, 1972 in the Western District of Pennsylvania.

2. The defendant, Donald Crandall, was duly subpoenaed to appear at the grand jury and was asked and answered the questions as hereinabove set forth and incorporated herein by reference in these Findings of Fact.

3. Before the grand jury there was an investigation into the allegation of mail fraud and conspiracy to commit mail fraud by a Francis D. Ferri, Charles Colaizzi, Mrs. Constance Ferri, and the Auto Spa Corporation, in presenting what was alleged to be a false insurance claim, and in using the mails in the presentation of such false insurance claim. In addition, there was an investigation with respect to an alleged coverup by using the product of this mail fraud to defraud a court in West Virginia in a criminal case.

4. The grand jury had been told that an insurance claim had been made for a number of items by Francis Ferri and the Auto Spa Corporation. The fact of the payment of this claim had become relevant in the trial of a Mr. David Ludwig for murder in West Virginia in the sense that some of the items listed in this claim were found at the scene of the murder in West Virginia. The items found at the murder scene identified David Ludwig (an employee of the Auto Spa) as the owner of the items. These same items were added to a burglary report by way of alteration in an attempt to show that they had been stolen in a burglary at the Auto Spa which had occurred prior to the murder in West Virginia.

5. The grand jury at the time was investigating the police report and whether or not the police report had, in fact, been altered, and if so, under what circumstances.

6. Donald Crandall was duly sworn as a witness at the grand jury hearing. This particular grand jury remained in session until February 8, 1972, and an indictment was returned when the grand jury was reconvened on May 3, 1972, at Criminal No. 72–138.

7. A superseding indictment was filed September 1, 1972, which charged substantially the same offense as in the previous indictment.

(b) This section is applicable whether the conduct occurred within or without the United States.

(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—

(1) each declaration was material to the point in question, and

(2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.

(d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admision is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

(e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

8. In addition to the questions and answers which were the subject of the original indictment, an explanation was given to Mr. Crandall as to the purpose of the investigation. This explanation was not recorded as a part of the grand jury minutes.

9. On April 7, 1972, Thomas A. Crawford, Jr., Esquire, of the Organized Crime and Racketeering Section, known as the Pittsburgh Strike Force, of the United States Department of Justice had a further interview with Donald Crandall. Shortly thereafter, after having been given his Miranda warnings Crandall voluntarily gave a written statement, which stated as follows:

"I Donald Crandall have been advised of my rights under Mirianda by postal Inspectors, R. L. Synder & R. F. Richerson. I have voluntarily signed a warning waiver form This 7th Day of April 1972. I am volunteering this statement to the above postal Inpectors at 816 Chatham Center, Pgh., Pa.

"On September 13, 1970 our Police Dept. received a call about a burglary at the Spa Car Wash on Route 30 North Versailles Twp. Officer Di-Cenzo answer complaint. Made out Report stating what had happen. On Sept. 15 or 16 I was asked by Charles Colaizzi 1018 Preston Dr. North Versailles Pa. if I would add some items to our report. *He told me that Rick Ferri wanted him to do this because he needed some money. That he would be making a claim to his Ins. Company.* Mr. Colaizzi offer me $100.00 if I would add this list of stolen items to our Police report. I did not know at this time, he came to see me, that this was involved in some other matters. All Charles Colaizzi told me was that he wanted to make a report to his Ins. Co. I told Mr. Colaizzi that I *would not* take any money from him, but I would add the list to the Police report. Mr. Charles Colaizzi talked to me out in front of our Police Station. On September 10th 1972

I was going into the Car Wash Mr. Rick Ferri gave me the list of items that stolen from the burglary on Sept. 13–1972. This Car Wash is known to me has the Spa Car on Route 30. I knew from talking to Mr. Colaizzi that apparently some of these items was not stolen. Around the middle of the next week, I was called to our office, by our chief to answer some questions why this list of items was added to our report.

"Mr. Hammer, from the County, & State Police from West Virginia was there investigating the case that happen in their State involving a murder.

"Because of the Police talking to me, I added a note, to my report, what day & time I received this list from Rick Ferri. In May of 1971 I received a call from Mr. Ashton asking me to be a witness in the trial of Mr. Ludwick.

"He also called me during the week of the trial again & also wanted me to be a witness for the defense. I told Mr. Ashton I would not get my self involved, in any kind of thing like that. So I never heard was him again.

"I wished I would have told Mr. Crawford the truth when I was in front of the Grand Jury, but I was afraid that they wouldn't believe me.

"I have read this three page statement & it is true." (Sic) (Errors are part of original hand written statement.)

10. This statement was given during the period of time that the grand jury which heard the original testimony was subject to recall, and the same grand jury returned the indictment on May 3, 1972.

11. Mr. Crandall was not called by the government to make any retraction before the grand jury after the government received the statement of April 7, 1972.

12. The defendant, Donald Crandall, was only one of three witnesses that

were called before the grand jury to testify with respect to the particular matters then under investigation.

13. Prior to making the statement of April 7, 1972, Mr. Crandall was shown a rough draft of the proposed indictment which did not contain a perjury count but which contained a conspiracy count and a mail fraud count clearly indicating Crandall's involvement in the entire proceeding.

14. In addition, prior to giving the statement of April 7, 1972, Mr. Crandall was told that the government was in touch with a witness (Glen Ervin) to whom he had made statements in conflict with his previous grand jury testimony, and it was alleged that his testimony was known to be false.

## DISCUSSION

To establish that the defendant, Donald Crandall, violated Title 18 of the United States Code, Section 1623, the government must prove beyond a reasonable doubt that the defendant under oath "in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration" shall be guilty of an offense. By subsection (d) of this statute it is provided:

"Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."

And in addition, by subsection (e), it is further provided as follows:

"Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence."

The original question to Crandall was whether or not, to the best of his knowledge, Colaizzi had anything to do with the insurance claim. His answer was that he didn't think, so that he really didn't know whether he did or not. He was further asked point blank whether Colaizzi ever contacted anybody in his Police Station or on his Police Force and his answer was no. He was further, specifically, asked if Colaizzi hadn't contacted Crandall and his answer was "Not that I know of".

His subsequent statement, given on April 7, 1972, stated that on September 15 or 16, 1970, he was asked by Charles Colaizzi if he would add some items to the police report of September 13, 1970. Colaizzi further informed Crandall that Rick Ferri wanted him (Crandall) to add the items because he needed the money represented by these items, and he (Ferri) would be making a claim to his insurance company. The statement further indicated that Colaizzi had offered Crandall one hundred dollars to add these items to the report. It is perfectly apparent that the answer given to the grand jury was false and that Crandall knew it was false. Thus, we find a situation where the question was direct and the answer was false. This, we believe, is a clear violation of the statute.

We are not here confronted with the problem recently decided by the Supreme Court of the United States in Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) where it was held that the federal perjury statute (18 U.S.C. Section 1621) did not reach a witness' answer that was literally true but unresponsive, even assuming that the witness intended to mislead the questioner by the answer, and even assuming the answer was arguably false by negative implication. Mr. Crandall, before the grand jury, did not speak the literal truth by any stretch of the imagination, as illustrated by his statement of April 7, 1973.

We now come to the discussion as to whether or not his testimony was

material to the proceeding. "Materiality" is certainly one of the cornerstones of the violation of 18 U.S.C. Section 1623. The defendant contends that his answers to the questions were not material to the investigation then being conducted by the grand jury. In this he misconceives the law on the subject. The only requirement is that the question be material to a subject of the grand jury investigation. The evidence need not be material even to the main issue. United States v. Tyrone, 451 F. 2d 16, 18 (9th Cir. 1971). In Vitello v. United States, 425 F.2d 416 at 424 (9th Cir. 1970), the following appears:

"In our view, appellant's contention is grounded on a defective premise. He obviously believes that the false statements must actually impede the grand jury investigation. This is not the law. Carroll v. United States, 16 F.2d 951, 954 (2d Cir. 1927), cert. denied 273 U.S. 763, 47 S.Ct. 477, 71 L. Ed. 880; Woolley v. United States, 97 F.2d 258, 262 (9th Cir. 1938). Judge Learned Hand, as usual, gives us a definitive statement on the subject in United States v. Siegel, 263 F.2d 530, 533 (2d Cir. 1959) cert. denied 359 U.S. 1012, 79 S.Ct. 1147, 3 L.Ed.2d 1035. After saying, 'No matter how right the witness might be in believing that the answer would not contribute to the investigation, he was bound to leave that decision to the tribunal.', he then articulates, 'A question is 'material', no matter what the answer may be, unless it appears by its terms that the answer cannot be 'material'.' 263 F.2d p. 533. To this language, he later adds: 'It is scarcely necessary to add that 'materiality' is always a question for the court.' P. 533. Even United States v. Marchisio, 344 F.2d 653, 655, (2d Cir. 1965), cited by appellant, adheres to the same rule, employing, in support, the much read and oft cited champagne bathtub case of Carroll v. United States, *supra*, in which the grand jury was principally concerned with whether a young lady bathed, on stage, in defendant's theatre in a bathtub of champagne or ginger ale, or both. Being during the prohibition era, the grand jury was rightfully and, in our opinion, understandably, concerned with the contents of the bathtub, not excluding the attractive young lady. The court, after an exhaustive analysis of the subject, had no difficulty in concluding that questions relating to the bathing techniques of the young lady in champagne or otherwise, were material as a matter of law. So, too, on the record before us, the lower court correctly ruled, as a matter of law, that the questions propounded to appellant were material."

Under the law, as we perceive it then, the questions put to Mr. Crandall were clearly material. Interestingly enough, Circuit Judge Kilkenny subsequently in the case of United States v. Millford E. Cook, at Appeal No. 26458 (9th Cir. 1972) [2] had occasion to consider the materiality of questions almost exactly similar to the questions here involved in which a defendant was asked: "Do you have any knowledge of law enforcement officers being paid by operators of gambling establishments?", and, "You don't have any knowledge of anybody currently on the force who participated in shakedowns?". These questions were held to be material to subjects under investigation by the grand jury concerning payoffs to a police department. This court finds that the questions asked and the answers given by Crandall were directly material to the mail fraud under investigation by the grand jury at the time of the witness' testimony.

We have further reviewed the entire record of the defendant's testimony before the grand jury and we are convinced that he was fully and completely informed as to the nature of the grand

---

2. The opinion was originally published in the Advanced Reporter at 468 F.2d 1164 but was withdrawn from publication by order of court.

jury hearing and knew, beyond question, what the grand jury was interested in, and that it was very material to their conclusions as to any contact that may have been made to Crandall by any person or persons. Mr. Crandall impresses one as being of more than average intelligence and understanding. He understood the questions and their meaning, and this precludes any possible misunderstanding as to the scope of the questions and the answers which he gave. We, therefore, conclude that the defendant under oath in a proceeding before a grand jury made a false material declaration which is proscribed by this statute.

■ Further, we find that the government's proof was beyond a reasonable doubt as required by Section 1623(e). There is no hesitancy from the standpoint of this court's conclusion that the evidence was overwhelming concerning all of the essential elements of the offense charged. However, this does not end our consideration of this case for we must determine the effect of Subsection (d) as to his possible recanting of his perjured testimony. This is considered in light of the findings of fact that the defendant did make a disclosure by way of a written statement on April 7, 1972; as far as the consideration in this case is concerned, it amounted to the truthful disclosure of the facts concerning the inquiry that had been made at the grand jury hearing, if not of all the facts that Crandall knew.

We note that subsection (d) states that in order to bar prosecution the person making the declaration (1) must admit that the prior declaration was false, (2) the admission must be in the same continuous grand jury proceeding in which the declaration was made, and (3) the declaration as originally made must not have substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

We note that this section (Section 1623(d)) was adopted in modified form from the New York Penal Code, Section 210.25, McKinney's Consol.Laws, c. 40, as part of Title IV, Organized Crime and Control Act of 1970. 2 U.S.Code Cong. & Admin.News, 1970 p. 4023–24; Hearing and Reports of the Committee on the Judiciary, S. 30 (1969). Our attention has been drawn by the government to the interpretation of the New York courts that the retraction must be made in the grand jury, which, of course, did not occur here. People v. Ezaugi, 2 N.Y.2d 439, 161 N.Y.S.2d 75, 141 N.E.2d 580, 64 A.L.R.2d 271 (N.Y. 1957); People v. Ashby, 17 Misc.2d 413, 184 N.Y.S.2d 284 (1959). And, in addition, the government argues that the word "continuous" was added to the statute for further clarification (See Hearings, S. 30, supra.) but we deem both of these contentions by the government to be incorrect. Under the circumstances of this case, we believe clearly that the statement was made during the continuity of the original grand jury and that the statement afforded to the government was equivalent to having been made in the grand jury proceeding, and was, in fact, read to the grand jury. As noted before in the Findings of Fact, the government did not recall Crandall although very apparently they had the ability and Crandall's consent to do so. Therefore, we do not feel it would be justice to say to the defendant that his statement was not in a grand jury proceeding when he was never really given the opportunity to recant in the grand jury room. These contentions of the government are incorrect and we find that the statement amounted to a timely admission, by comparison, to the falsity of the original testimony.

There is, however, another condition which must be met in order to apply the bar to prosecution contained in Subsection 1623(e), and, that is, that the falsity must not have substantially affected the proceeding. It is perfectly clear that the falsity in this case did affect the grand jury proceeding because the grand jury was deprived initially of competent evidence of Mr. Ferri's and

Mr. Colaizzi's guilt, at least until the time of the statement. This resulted in a substantial delay of over two months.

Had Mr. Crandall recanted his statements immediately, perhaps not too much harm would have been done, but, as he chose not to do so for a period of two months, he is certainly in no position to complain that the declaration did substantially affect the proceeding. We, therefore, hold that the subsequent "recantation" or statement of April 7, 1972, could not bar prosecution under this section since the original declaration did substantially affect the proceeding.

In addition, the subsequent statement must be made under circumstances where "it has not become manifest that such falsity has been or will be exposed". In this regard, we believe that the government is correct in their contention that Crandall's involvement, i. e. in particular the falsity of his testimony, had become manifest by being shown a rough draft of the indictment against him and Mr. and Mrs. Ferri. This indictment charged him with conspiring with the Ferris and Mr. Colaizzi, and made perfectly clear to all concerned that the falsity of Crandall's testimony had been exposed.

Besides this, prior to his admitting the falsity of his testimony, Crandall was told that the government was in touch with a witness to whom he had made some statement which was in direct conflict with his grand jury testimony (Glen Ervin), and that his testimony was known to have been false. Any recantation after this will not operate to discharge the perjury for this court is not about to encourage false swearing in the belief that if the falsity is not discovered before the end of the hearing, it will have its intended effect, but, if discovered, the witness may purge himself from crime by resuming his role as a witness and substituting the truth for his previous falsehood. If we were to do so, we would ignore the fact that the oath administered to the witness calls on him to disclose the truth in the first instance and not to put the court and the parties to the disadvantage and delay of ultimately extracting truth by cross-examination, extraneous investigation or other collateral means. United States v. Norris, 300 U.S. 564, 574, 57 S.Ct. 535, 81 L.Ed. 808 (1937). We, therefore, hold that the statement on April 7, 1972 was given only after it became manifest that the falsity had been exposed. Therefore, the admission of the falsity and the telling of the truth came too late to be of assistance to this defendant.

## CONCLUSIONS OF LAW

1. Jurisdiction and venue of this action are properly laid in this court.

2. The defendant under oath in a proceeding before a grand jury in the Western District of Pennsylvania, knowingly made a false material declaration and is guilty of the offense charged in the indictment, a violation of 18 U.S.C. A. Section 1623.

3. The government has established beyond a reasonable doubt each and every element of the offense charged in the indictment.

4. The defendant in substance made a declaration which admitted that his testimony before the grand jury was false, but his admission can not bar prosecution since at the time of the omission the declaration had substantially affected the proceeding and it had become manifest that such falsity had been or would be exposed.

5. Donald Crandall is adjudged guilty of the violation of the offense charged in the indictment.

An appropriate order will be entered.