## UNITED STATES *v.* NORRIS.

No. 600.   Argued March 11, 1937.—Decided March 29, 1937.

*Mr. Charles E. Wyzanski, Jr.,* with whom *Solicitor General Reed, Assistant Attorney General McMahon,* and *Mr. William W. Barron* were on the brief, for the United States.

*Mr. William E. Shuman* for respondent.

566

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The record in this case presents an important question of federal criminal law which has not been settled by our decisions. Does retraction neutralize false testimony previously given and exculpate the witness of perjury? [1]

April 10, 1930, the United States Senate, by resolution, empowered the Vice-President to appoint a special committee to investigate campaign expenditures of candidates for the Senate, the committee to sit at such times and places as it should deem proper, to require attendance of witnesses and production of books and papers, and to act by any subcommittee. Failure to obey process of the committee or refusal to answer questions pertinent to the investigation was to be punished according to law. The

---

[1] Compare *Loubriel* v. *United States*, 9 F. (2d) 807, 808; *Ex parte Chin Chan On*, 32 F. (2d) 828; *Ex parte Keizo Shibata*, 35 F. (2d) 636; *Johnsen* v. *United States*, 41 F. (2d) 44, 46; *Masaichi Ono* v. *Carr*, 56 F. (2d) 772; *Seymour* v. *United States*, 77 F. (2d) 577, 582.

resolution recited that the Senate desired facts to aid it in enacting remedial legislation and in deciding contests involving senatorial elections.[2] The committee so appointed authorized Senator Nye, the Chairman, to act as a subcommittee and to name a subcommittee of one or more members. Such a subcommittee, consisting of Senators Nye and Dale, met September 22, 1930, at Lincoln, Nebraska. The Nebraska primary election had been held on August 12, 1930; the general election at which the names of senatorial candidates were to appear on the ballots was to be held the following November. Senator George W. Norris of McCook, Nebraska, had filed for the Republican primaries on January 1, 1930, and W. M. Stebbins had, on November 12, 1929, filed his acceptance of Republican nominating petitions in his behalf. The respondent had attempted to file for the same primaries on July 5, 1930, but the Supreme Court of the State had ruled on July 18th that his application was not filed within the time prescribed by law and had ordered the Secretary of State to omit his name from the list of candidates for United States Senator to be certified to county clerks and election commissioners.[3] In the light of these facts the subcommittee summoned the respondent to testify on September 22, 1930. He was called and sworn to tell the truth and the whole truth. He narrated something of his personal history and said his original intention was to run for State Railway Commissioner, but he did not file for that office because he thought about filing for United States Senator. He gave the following testimony:

"Q. Now what assurance did you have of financial support and backing?

A. None whatever.

---

[2] Senate Resolution No. 215, 71st Cong., 2d Sess., 72 Cong. Rec 6841–6842.

[3] *State ex rel. Smith* v. *Marsh,* 120 Neb. 287, 289; 232 N. W. 99.

Q. In your campaign?

A. None whatever.

. . . . .

Q. Did you get any assurance from anybody that they would help you—Republican, Democrat, independents, or anybody say they would help to finance your campaign?

A. No, sir.

. . . . .

Q. Did you receive any money from anybody in the campaign?

A. I did not."

After the conclusion of his testimony the subcommittee adjourned until the following day, when several witnesses were examined, amongst whom was one Johnson. The respondent was present and heard Johnson testify. After consulting his counsel he asked and was granted permission to return to the stand. He then admitted the receipt from Johnson of $50 to be used for his filing fee and a $500 government bond, and stated that he had cashed the bond through his brother at North Platte.

June 23, 1931, the grand jury for the District of Nebraska indicted the respondent for perjury under § 125 of the Criminal Code.[4] On his trial the government proved the facts as above outlined and called Johnson as a witness who testified that, pursuant to a plan devised by himself and others, he had approached the respondent on June 30th and requested him not to file as a candidate

---

[4] "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, shall willfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury, and shall be fined not more than $2,000 and imprisoned not more than five years." R. S. § 5392; 18 U. S. C. § 231.

for Railway Commissioner but to file for United States Senator telling him that if he were willing to do this the Republican Party would support him and $50 would at once be paid him for his filing fee and $500, the estimated amount of his campaign expenses, would also be paid to him. He swore that, on July 2nd, he gave the respondent $50 and, on the next day, handed him a $500 bond.

The respondent took the witness stand and admitted that he "knew at the time of testifying [before the Senate Committee] that he had received $500 and $50 and what he was saying was not true."

In charging the jury the judge stated that the respondent could not be convicted if he testified carelessly, negligently or hastily but the jury must find that his testimony was intentionally untrue and that he did not believe it true when he gave it. And, respecting the retraction of his former testimony, the judge stated that the jury might consider the retraction along with the other evidence "on the question of whether or not considering what the defendant testified on the day prior and his act of testifying again the following day and what he said in his testimony, the defendant wilfully, that is, intentionally testified falsely in his testimony on the day before in the matters charged against him."

The respondent requested the following instructions:

"The Jury are instructed that even if you find that the defendant in this case made false answers to the questions which were put to him at the hearing before the Senate Committee in question, and if you also find that while this hearing was yet continuing and while the matter was yet pending before the Senate Committee, the defendant corrected any erroneous or false statements that were made, if any, then you will find the defendant not guilty."

"The Jury are instructed that if you find the defendant, in the latter portion of his examination before the Senate

Committee, corrected statements that may have been incorrect or even intentionally false, made prior to the correction of the defendant, then you will find the defendant not guilty."

These were refused and an exception granted. The jury rendered a verdict of guilty, sentence was imposed, and the respondent appealed to the Circuit Court of Appeals, which reversed the judgment,[5] holding that the trial court erred in refusing to submit to the jury the question whether the respondent had fully and fairly retracted and corrected his original false statements. In the course of its opinion the court stated the following would have been a proper charge, and failure to give a charge of such tenor was reversible error:

"The jury are charged that the law encourages the correction of erroneous and even intentionally false statements made by a witness upon a trial or hearing, and so, if you shall find and believe from the evidence that defendant made false answers to the questions or any of them which were put to him at the hearing before the Senate Subcommittee (which questions are set out in the indictment and which questions the court has already in this charge called specifically to your attention), yet that defendant, while the hearing was continuing and unfinished again took the witness stand and then and there fully corrected all erroneous or false statements, if any, which had theretofore been made by him in answer to said questions, you should find the defendant not guilty."

The respondent insists that reversal of his conviction was right because (1) Congress exceeded its power in adopting Resolution No. 215, since it cannot legislate for the purpose of regulating primary elections; (2) perjury can only be committed if an oath be taken in a case wherein a law of the United States authorizes an oath

---

[5] 86 F. (2d) 379.

to be administered, and the committee hearing was not such a case; (3) the false testimony concerned an immaterial matter, and (4) the whole of a witness's evidence must be taken together and, if his testimony be ultimately true, his indictment for perjury cannot be predicated thereon.

Little need be said with respect to the first three propositions. That it is within the constitutional province of Congress to institute investigations and to compel evidence with a view to possible exercise of its legislative function [6] or possible discharge of its duty to determine the validity of the election of its members [7] is settled. R. S. § 101,[8] is a law of the United States authorizing any member of either house of Congress to administer oaths to witnesses in any matter pending in either house of Congress or any committee thereof. The materiality of the respondent's false answers is clear in view of the scope of the inquiry. The resolution authorized the committee "to investigate the campaign expenditures of the various candidates for the United States Senate, the names of the persons . . . subscribing, the amount contributed, the method of expenditure, and all facts in relation thereto . . ."

We come to the substantial question which moved us to grant the writ of certiorari. We hold the District Judge was right in refusing to charge as requested by the respondent, and the judgment should not have been reversed on account of his failure so to do. The respondent admitted he gave intentionally false testimony on September 22d. His recantation on the following day cannot alter this fact. He would have us hold that so long as the cause or proceeding in which false testimony is given is not closed, there remains a *locus poenitentiae* of which

---

[6] *McGrain* v. *Daugherty*, 273 U. S. 135.

[7] *Barry* v. *United States*, 279 U. S. 597.

[8] U. S. C. Tit. 2, § 191.

he was entitled to and did avail himself. The implications and results of such a doctrine prove its unsoundness. Perjury is an obstruction of justice; its perpetration well may affect the dearest concerns of the parties before a tribunal. Deliberate material falsification under oath constitutes the crime of perjury, and the crime is complete when a witness's statement has once been made. It is argued that to allow retraction of perjured testimony promotes the discovery of the truth and, if made before the proceeding is concluded, can do no harm to the parties. The argument overlooks the tendency of such a view to encourage false swearing in the belief that if the falsity be not discovered before the end of the hearing it will have its intended effect, but, if discovered, the witness may purge himself of crime by resuming his role as witness and substituting the truth for his previous falsehood. It ignores the fact that the oath administered to the witness calls on him freely to disclose the truth in the first instance and not to put the court and the parties to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross examination, by extraneous investigation or other collateral means.

Notwithstanding the fact that the testimony originally given and allowed then to stand as his final statement on the subject of inquiry falls clearly within the definition of § 125 of the Criminal Code the respondent insists that the authorities, English and American, demonstrate that his retraction before the conclusion of the proceedings in which he testified absolve him and preclude a conviction. Perjury has been a common law crime since at least the seventeenth century. Quite generally the conception embodied in the common law definition of perjury has been embodied in statutes. This is true of § 125. But it cannot be said that there is any respectable body of authority under the common law or statute in England or in the United States to support the respondent's position. On

the contrary, the cases in which the courts have dealt directly and specifically with the question here for decision are surprisingly few. The respondent plants himself upon *Roy* v. *Carr*, 1 Siderfin 418, 82 Eng. Rep. 1191, a case decided in 1669, which he claims established the doctrine for which he contends and has been followed both in England and in this country. A critical examination of the case arouses grave doubt that it held, or was intended to hold, that a retraction of a witness's false testimony negatives the commission of perjury; and in later cases the English courts have so intimated and have said that if it stood for such a proposition it probably would not be followed.[9] Several later English decisions squint in the opposite direction, and some of them come near to refute the respondent's argument with respect to the English law.[10]

Decisions of state courts of last resort in this country do not make a much better case for the argument. One state supreme court seems to have held directly in accordance with the contention in an appeal from a conviction of perjury.[11] One lower court case is in accord.[12] In one state court of last resort wherein the question arose in a slander suit, where the defendant was alleged to have improperly charged a witness with having committed perjury in another proceding, the court answered it favorably to respondent's claim.[13] The Appellate Division of the Supreme Court of New York has definitely held with the respondent upon the point, in a case where the witness corrected his false testimony immediately and told the truth

[9] *Edwards* v. *M'Leay*, 2 Vesey & D. 256, 258, 35 Eng. Rep. 316; *Reg.* v. *Holl*, 45 Law Times Rep. 69.

[10] *Rex* v. *Thorogood*, 8 Mod. 179, 88 Eng. Rep. 131; *Allen* v. *Westley*, Hetley 97, 124 Eng. Rep. 372; *Reg.* v. *Philpotts*, 5 Cox's Crim. Cas. 363; *Reg.* v. *Holl*, 45 Law Times Rep. 69.

[11] *Brannen* v. *State*, 94 Fla. 656, 114 So. 429.

[12] *Commonwealth* v. *Irvine*, 14 Pa. D. & C. Rep. 275.

[13] *Henry* v. *Hamilton*, 7 Blackf. (Ind.) 506.

although, in that case, the conviction was reversed on several grounds any one of which would have been adequate for reversal.[14] The Court of Appeals of New York has not spoken on the subject, and in a later case a lower court has refused to follow the decision mentioned where the contradictory statement was not part of the same examination at which the false statement was made.[15]

While we should accord respectful consideration to decisions of the English and American courts supporting the respondent's view, the research of counsel and our own examination disclose that there is no substantial body of authority favoring it. As will appear by scrutiny of the cases cited in Note 1, the lower federal courts have not dealt with the question often, and while their expressions may not be entirely consonant, it may be said that they preponderate against the respondent's contention. We are free, therefore, to give such meaning and effect to § 125 of the Criminal Code as in justice we think ought to be attributed to it. The plain words of the statute and the public policy which called for its enactment alike demand we should hold that the telling of a deliberate lie by a witness completes the crime defined by the law. This is not to say that the correction of an innocent mistake, or the elaboration of an incomplete answer, may not demonstrate that there was no wilful intent to swear falsely. We have here no such case.

The judgment of the Circuit Court of Appeals must be reversed and that of the District Court affirmed.

*Reversed.*

[14] *People* v. *Gillette*, 126 App. Div. 665; 111 N. Y. S. 133.

[15] *People* v. *Markan*, 123 Misc. 689; 206 N. Y. S. 197.