**UNITED STATES of America**

v.

**Leland R. DENISON.**

**Crim. A. No. 80–67–A.**

United States District Court,
M. D. Louisiana.

Jan. 30, 1981.

C. Michael Hill, Asst. U. S. Atty., Baton Rouge, La., for plaintiff.

Lewis O. Unglesby, Baton Rouge, La., for defendant.

## MEMORANDUM OPINION

PARKER, Chief Judge.

This matter is before the Court on a motion for bill of particulars, a motion to dismiss and a supplemental motion to dismiss. A hearing was held on these motions on December 5, 1980, and the matter was thereafter submitted on briefs filed by both sides.

This case arises out of a grand jury investigation into allegations that a listening device had been installed upon the telephone lines at a campaign headquarters of Mr. Paul Hardy, who was a candidate for Governor of Louisiana. The investigation began in late September or early October of 1979. The defendant is a member of the Louisiana State Police with some experience in the field of monitoring devices, and his brother-in-law, Guy M. Bellelo, was active in Mr. Hardy's campaign. The defendant reported to Bellelo and perhaps others in the Hardy campaign that he had discovered such a listening device on the telephone lines at the campaign headquarters. The local U. S. Attorney and the Federal Bureau of Investigation were contacted by either the defendant or someone else in the Hardy campaign and requested to investigate the matter. The grand jury investigation was then undertaken.

The defendant appeared before the United States Grand Jury for the Middle District of Louisiana on October 9, 1979, and testified for about a half hour. The Assistant U. S. Attorney conducting the interrogation concluded his questions and asked that the witness remain outside the grand jury room for a few moments.

After conclusion of the testimony, the Assistant U. S. Attorney handling the investigation, Mr. C. Michael Hill, together with Special Agent Jerry Phipps of the FBI, accompanied the defendant to a room on the second floor of the Courthouse. There, the defendant was informed by Mr. Hill and Mr. Phipps that he had perjured himself before the grand jury, which the defendant denied. Mr. Hill and Mr. Phipps engaged in some conversation with the defendant regarding his testimony, and he was informed that they had evidence which would show that he had perjured himself. The defendant then asked that he be allowed to view the evidence, and photographs were made available for his inspection. After inspection of the photographs, defendant then admitted that he had not told the grand jury the truth, and he related a story which was substantially in conflict with the testimony he had just given the grand jury. He was advised at that time by Mr. Hill that he had no right to purge himself of perjury or to "recant." A written statement was taken from the defendant by the FBI, and he agreed to cooperate in the investigation. The testimony shows that the defendant made several telephone calls at the request of the FBI, which calls were recorded without the knowledge of the person on the other end of the conversation, and that the defendant was also provided with a personal tape recording device by the FBI and that he did tape-record some conversations with others. Apparently, this took place on the afternoon of October 9, and possibly some time on October 10, 1979.

On October 10, 1979, the defendant again appeared before the grand jury and told a story substantially in conflict with his testimony of the previous day and substantially in accord with the statement he had given the FBI on the previous day subsequent to his testimony.

On September 30, 1980, the defendant was indicted for five counts of making false declarations to a grand jury in violation of 18 U.S.C. § 1623. In each count, the government alleges that his declarations before the grand jury on October 9 and 10, 1979, are inconsistent to the degree that one of them is necessarily false, and further alleges facts which the government claims are true.

The motion to dismiss raises the issue of whether the defendant has recanted his false testimony, thus barring prosecution for his perjury under Section 1623(d).

*Motion for Bill of Particulars*

The motion for bill of particulars is closely related to the "recantation" defense raised in the motion to dismiss.

Paragraphs 1 through 5 of the motion for bill of particulars ask that the government be required to declare whether the October 9th testimony or the October 10th testimony was untrue or whether both were untrue, as to each of the five counts. Paragraphs 6 through 10 of the motion ask that the government be required to declare what aspects, if any, of the October 10th statements were untrue, as to each of the five counts; and paragraphs 11 through 15 ask that the government be required to declare what aspects, if any, of the October 9th statements were untrue, as to each count.

The defendant argues that unless the October 10th statements are accepted as true then the defendant has still not told the truth and hence not "recanted." Further, the defendant argues that where the government, as it has here, charges both that the statements are so mutually inconsistent that one of them must be false and also charges what the defendant's counsel refers to as "normal" perjury, that the defendant should be entitled to require the government to declare which statements it considers false and which statements it considers to be true.

In response, the government, citing Section 1623(c), declares that where inconsistency is charged, the government cannot be required to declare which statement it considers false and "declines further comment." As to paragraphs 6 through 15 of the motion for bill of particulars, the government directs the defendant to paragraph 6 of each count.

As previously indicated, each count of the indictment charges both inconsistency and declaration of what the government claims to be the true facts. For example, Count I of the indictment charges that on October 9th Denison testified that he had a meeting in Slidell, Louisiana, with a Mr. Davis which was an accidental meeting and that they did not discuss the listening device. It further alleges that the October 10th testimony is to the effect that the meeting in Slidell was a prearranged meeting and that the listening device was, in fact, discussed. Paragraph 6 of that count alleges that the testimony was not true, in that:

"A. The declaration in paragraphs 4 and 5 above are inconsistent to the degree that one of them is necessarily false; and

"B. The meeting with George Davis in Slidell was a prearranged meeting at which the defendant, LELAND R. DENISON, and George Davis discussed the attachment of the alleged monitoring device to the telephone lines at the campaign headquarters of gubernatorial candidate Paul Hardy."

Each of the other counts is constructed in similar fashion, that is to say, the October 9th testimony being set forth followed by the October 10th testimony followed by a declaration in paragraph 6–A that the statements are inconsistent to the degree that one of them is necessarily false and in 6–B a statement as to what the government contends is the truth.

At the hearing on these motions, Mr. Hill testified that he had independent corroboration for some of Mr. Denison's statements made on October 10th and that as to those statements which were corroborated, he believes them to be true. It is the government's position that it does not know whether all of Mr. Denison's October 10th testimony was true and that it should not be compelled to take a position on it one way or the other.

Section 1623(c) provides, in part:

"An indictment ... alleging that ... the defendant ... made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false ...."

■ Each count of this indictment very clearly alleges that the defendant made two declarations which are inconsistent to that degree, and under the clear terms of the statute the government need not specify which declaration is false. The defendant has shown no unusual or compelling need for the government to make such a specification and, since it is specifically relieved from that requirement, the motion for bill of particulars will be denied.

*Motion to Dismiss*

The defendant's dismissal motions raise the following issues:

(1) Defendant claims that prosecution is barred under the provisions of 18 U.S.C. § 1623(d) in that he admitted that his October 9th testimony was false and told the grand jury the truth on October 10th.

(2) The defendant challenges the materiality of the questions propounded to him in the grand jury testimony.

(3) He attacks Section 1623(d) as being vague and ambiguous.

(4) By supplemental motion the defendant alleges that the questions asked and the answers given to the grand jury on both October 9th and 10th are vague and ambiguous.

In reply, the government declares that it had become manifest that the defendant's false statement had been or would be exposed and that the defendant cannot plead the bar to prosecution established by Section 1623(d). The government denies that the statute is vague, has filed a separate

motion on materiality and declares that a claim of vagueness of the questions is a factual one to be presented to the jury.

▮ The defendant strenuously argues that the facts show that he exercised his "right to recant" and that the Court should order the indictment dismissed in this pre-trial motion. Although we have found no Fifth Circuit cases on point, it seems clear that the defense of "recantation" is a matter that addresses itself to the Court and that under Rule 12, Fed.R.Cr.P., it ought to be raised by pretrial motion and disposed of by the Court. *United States v. Kahn*, 472 F.2d 272 (2d Cir. 1973); *United States v. Swainson*, 548 F.2d 657 (6th Cir. 1977), *cert. den.*, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977).

Some of the facts are recited above. In addition to those facts, the Court finds that on October 9, 1979, the defendant was invited to come to the Federal Courthouse for a conference with FBI agent Phipps but he was not informed that a grand jury appearance was planned, he was not subpoenaed and he was without counsel. Upon arrival, the defendant was immediately asked whether he had any objection to appearing before the grand jury and he agreed to do so.

The transcript of the testimony of October 9th before the grand jury, which was admitted as an exhibit, shows that in addition to the *Miranda* warning, Mr. Hill told Denison:

"Q ... I also want to advise you that you are a target of the grand jury investigation. And what that means is that your actions are being investigated; do you understand that?

"A Yes."

The defendant waived counsel and proceeded to testify falsely to the grand jury concerning the attachment of a listening device to the telephone lines at the Hardy campaign headquarters. At the time that Denison testified, the government was in the possession of evidence which indicated that he was not telling the truth. The defendant was not challenged concerning his testimony, and no reference to the conflicting evidence was made while he was before the grand jury. As noted above, immediately following his grand jury testimony, Mr. Hill and Mr. Phipps confronted the defendant with the photographs and Denison admitted his perjury to the grand jury. Thereafter, he gave the FBI a written statement. The defendant requested the opportunity to go before the grand jury again, and on October 10th he did so, again without subpoena or prior notice. The transcript indicates that he was fully advised of his rights on that occasion and that he voluntarily testified without the assistance of counsel.

The defendant does not dispute these basic facts but instead argues that because of the manner in which the U. S. Attorney's Office handled the first grand jury appearance, the defendant has been unfairly deprived of his "right to recant." He also argues that his false testimony of October 9th did not substantially affect the grand jury investigation. Defendant, in brief, poses the issue as "whether Denison is foreclosed from alleging recantation because he was informed of the falsity before he had any opportunity to reflect on his perjury."

▮ Section 1623(d) reads as follows:

"Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, *or* it has not become manifest that such falsity has been or will be exposed." (Emphasis supplied)

The government argues that when Denison was confronted with evidence which conflicted with his testimony, immediately following the October 9th grand jury appearance, it had "become manifest that such falsity ha[d] been or [would] be exposed" and that the defendant could no longer escape prosecution by recantation. The defendant argues that if the prosecution is permitted to wait until the lying

witness leaves the grand jury room to confront him with conflicting evidence, then the prosecution has unfettered discretion to cut off the witness's "right to recant." The defendant then urges that the Court ought not to vest such broad powers in prosecutorial officials. Moreover, the defendant argues, since his false testimony did not substantially affect the proceeding, then his statement to the FBI on October 9th and his testimony before the grand jury on October 10th constitute a recantation and preclude prosecution.

It thus becomes necessary to construe Section 1623(d). The defendant argues that if he can show *either* that his false declaration did not substantially affect the proceeding *or* that he admitted the falsehood before it became "manifest," then he meets the statutory requirement for recantation. The government argues to the contrary, that both requirements must be satisfied.

While there are no Fifth Circuit decisions of which we are aware considering the point at issue, other courts have uniformly either assumed without discussing, *United States v. Kahn, supra, United States v. Del Toro,* 513 F.2d 656 (2d Cir. 1975); *United States v. Swainson, supra; United States v. Mitchell,* 397 F.Supp. 166 (D.C.Cir.1974), or have squarely held that the defendant must satisfy both requirements, *United States v. Crandall,* 363 F.Supp. 648 (D.C.Pa.1973), aff'd, 493 F.2d 1401 (3rd Cir. 1974), 495 F.2d 1369 (3rd Cir. 1974), *cert. den.,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 83 (1974); *United States v. Moore,* 613 F.2d 1029 (D.C.Cir. 1979).

The Court in the *Moore* case, *supra,* considered the legislative history of the statute at length and concluded that in Section 1623(d) the disjunctive word "or" should be read as the conjunctive word "and," holding that it is essential that the defendant satisfy both the no "substantial effect" and the "not made manifest" requirements. While the reasoning of that opinion is persuasive, I am convinced that no such involved process is required to determine the meaning of the section. The statute, if broken down correctly, grammatically speaking, clearly sets forth two requirements:

" ... [S]uch admission [of falsity] shall bar prosecution ... if, at the time the admission is made, the declaration has not substantially affected the proceeding *or* it has not become manifest that such falsity has been or will be exposed."

While the legislative sentence structure may not be perfect, what the Congress is telling witnesses who lie in judicial proceeding is: "If your perjury has not substantially affected the proceeding *or* already been made manifest, then you may recant and escape punishment."

Failure to satisfy *either* requirement precludes the "recantation" defense; in other words, the defendant must satisfy both requirements, and I so hold.

The defendant argues that where the prosecution has evidence that the witness is lying, it ought not to permit the witness to perjure himself without calling the conflicting evidence to his attention and giving him a chance to recant and that here the government should not be permitted to cut off Denison's "right to recant." However, the defendant himself agrees that the jurisprudence holds that the prosecution is not obliged to warn a witness before a grand jury that it has evidence tending to show that his testimony is false, *United States v. Camporeale,* 515 F.2d 184 (2d Cir. 1975); nor to inform the witness of the recantation provisions of Section 1623(d), *United States v. Lardieri,* 506 F.2d 319 (3rd Cir. 1974).

Defendant argues, however, that under circumstances where he was "invited" to confer with Agent Phipps without notice that he would be asked to appear before the grand jury and where he appeared without counsel, he at least should be granted a reasonable period of time for reflection upon his perjury before cutting off his "right to recant" by confronting him with the evidence.

■ All reported cases which have considered the provisions of Section 1623(d) conclude that the congressional purpose was to induce a witness to give truthful testimony in judicial proceedings by permitting

him to *voluntarily* correct a false statement without incurring the risk of prosecution by doing so. *United States v. Moore, supra; United States v. Del Toro, supra.* Recantation can hardly be said to be *voluntary* when the witness recants only after he is confronted with evidence exposing his lie. Here, Denison did not admit his false declarations until the government showed him evidence of the falsity.

■ I cannot subscribe to the notion that the prosecution has any duty to warn a lying witness that it has evidence which conflicts with his testimony, nor do I find any obligation upon the government to grant a period of reflection and soul-searching to a lying witness.

■ The defendant argues that under Section 1621 and the prior law on perjury that the crime was complete upon the first false swearing, *United States v. Norris*, 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808 (1937), and that adoption of Section 1623 somehow has changed the law as regards false declaration in judicial proceedings.

I can find no congressional intent in Section 1623 to grant to each perjurer in a judicial proceeding the "first lie" such as the common law is reputed to have granted to each dog the "first bite."

On the contrary, perjury under Section 1623 is also complete when the lie is uttered. Recantation does not erase the lie; it simply erects a bar to prosecution when the statutory requirements have been met. Section 1623(d) presents a narrow and highly qualified "out" for a person whose conscience makes him correct his false testimony in a judicial proceeding. Those provisions do not forgive the lie nor excuse the liar; they simply provide a bar to prosecution under the limited circumstances specified.

■ Here, Denison was not trapped nor unfairly treated. He was immediately informed upon his appearance before the grand jury on October 9th that he was a "target" of the investigation, and he knew that he was free to leave since no subpoena had been issued commanding his presence.

He was also aware that he could plead his privilege under the Fifth Amendment and decline to answer incriminating questions. Implicit in Denison's whole argument on this point is the inference that the government somehow "forced" him to lie and then denied him his "right to recant." It is neither unconstitutional, immoral, nor unfair to force a suspect or "target" to choose between claiming his right against self-incrimination and committing perjury. *United States v. Del Toro*, 513 F.2d at 664. If the witness does not want to tell the incriminating truth or commit perjury, he can simply remain silent. If he elects to lie, he cannot blame the government for asking the questions to which he gave false answers.

Section 1623(d) does not confer a "right to recant" in the sense that defendant here has used it. These statutory provisions provide a very limited bar to prosecution, offered by the Congress to a narrow range of perjurers who voluntarily correct their false statements before falsity is discovered and before the declarations have substantially affected the proceeding.

In view of the holding that the defendant must satisfy both statutory requirements in order to successfully plead recantation, it is not necessary to pass upon defendant's claim that his false statements did not materially affect the grand jury proceedings.

■ The defendant makes much of his purported cooperation with the government, which began shortly after he found out that he had been caught lying to the grand jury. The defendant admits that no promises were made to him relative to non-prosecution in exchange for his cooperation. It is well settled that cooperation with the government does not excuse criminal conduct, *United States v. Moore, supra*, and Section 1623(d) provides that it is the admission of the false declaration which establishes a bar to prosecution. The statute does not mention cooperation with the government.

■ Finally, as to recantation, the defendant argues that since the grand jury

heard no witnesses during the period between the defendant's two appearances on October 9th and 10th, respectively, the grand jury had no evidence concerning the falsity of his October 9th testimony and thus it had not become manifest *to the grand jury* that his October 9th testimony was false. It will be remembered that the statute provides that admission of falsity is a bar if "it has not become manifest that such falsity has been or will be exposed." Defendant argues that although it was "manifest" to the U. S. Attorney and to the FBI, as well as to the defendant, that his false statements would be exposed, it did not become manifest to the grand jury until he testified for the second time.

It is true that the statute does not state with particularity to whom the manifestation of falsity must be made. The statute means, however, that admission of falsity will be a bar only if it has not become manifest that the lie will be exposed to either the defendant himself or to the grand jury. If the defendant tells the truth only because he knows he is going to be exposed, the congressional purpose will not have been served; and if the grand jury finds out on its own that the defendant lied to it, the congressional purpose will not be served. As previously indicated, the purpose of the statute is to encourage *voluntary* correction of false testimony, and it is only where the perjurer makes such a voluntary admission that he can claim the statutory bar to prosecution.

Under the evidence presented to the Court, the defendant has not established a statutory bar to prosecution under Section 1623(d) by reason of recantation.

 Next, the defendant insists that the indictment must be dismissed because Section 1623(d) is vague and ambiguous. Apparently, defendant argues that this proviso is unconstitutionally vague. We have already examined the statute and determined that the use of "or" is neither vague nor grammatically incorrect. The statute simply requires careful reading.

Defendant also attacks the term "substantially affected the proceeding." I do not consider these words to be unduly ambiguous or vague. They set forth a reasonable test which certainly can be articulated. Moreover, in view of the holding that the defendant did not make his admission prior to it becoming manifest that the falsity would be exposed, we do not need to consider that portion of the statute.

The defendant also argues that the statute is ambiguous because it fails to specify whether it is to the grand jury or to the accused that the falsity of the declaration must be made manifest. As noted above, this Court is of the opinion that if it becomes manifest to either the grand jury or to the witness that the lie will be exposed, it is too late to correct the false statement and claim the bar of Section 1623(d).

The defendant also argues that the statute is vague because it fails to provide any "guidelines" concerning the length of time that the recantation defense is available or any "guidelines" as to the government's right to prevent the defense by its own actions. As we have covered already, this statute does not grant the defendant any period of time within which to recant. A person who lies to a federal grand jury or in a court proceeding runs the risk that his lie will be discovered before he corrects it. A strong argument can be made that if at the time the witness lies, the grand jury is in possession of evidence showing the lie, his "right to recant" never arises because his lie is "made manifest" at the time he utters it. Such a construction would accord with congressional intent but we do not need to resolve that issue here.

The government does not "prevent the defense of recantation" by confronting the witness with evidence of his lie. If the witness had not lied in the first place, there would be no need to consider recantation. Had the defendant wanted to tell the grand jury the truth, he could have done so without fear of prosecution for perjury at any time before he left the grand jury room on October 9th. He chose not to do that. Certainly there is no evidence that the government prevented him from telling the truth. This statute is neither vague nor ambigu-

ous; it simply does not grant the "rights" which the defendant claims.

Defendant's final argument is that the questions asked and the answers given at both the October 9th and October 10th grand jury appearances are vague and ambiguous. It is well settled that mere vagueness or ambiguity in the questions asked before a grand jury is not sufficient to establish a defense to a charge of perjury. *United States v. Chapin*, 515 F.2d 1274, 1279 (D.C.Cir.1975), *cert. den.*, 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975).

For the foregoing reasons, the motion for bill of particulars and the motion to dismiss the indictment are hereby DENIED.