**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leland R. DENISON,**
**Defendant-Appellant.**

No. 81–3189
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1981.

Rehearing En Banc Denied
Jan. 27, 1982.

Lewis O. Unglesby, Baton Rouge, La., for defendant-appellant.

C. Michael Hill, Asst. U. S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal presents the question whether the federal recantation statute precludes a prosecutor from confronting a witness with evidence of his perjury, thus ending the possibility of recantation, before the witness has had a chance to reflect on his perjured testimony and perhaps recant.[1]

The appellant, Leland Denison, was convicted of two counts of perjury before a grand jury under 18 U.S.C. § 1623 (1976). On appeal, he contends that the district judge erred in refusing to dismiss the indictment against him on grounds that the prosecutor unfairly deprived him of his statutory right to recant his false testimony.[2] Because we hold that a witness has no absolute "right to recant" that requires a prosecutor to delay exposing the witness's perjury to him, we affirm his conviction.

## I. THE FACTS

This case grows out of a scheme to create publicity for a political candidate by planting a listening device on the candidate's telephone line, then publicizing the news that the line had been tapped. Unfortunately for the appellant, the scheme failed to fool the local United States Attorney and the Federal Bureau of Investigation (FBI).

In response to a report by the campaign staff of Paul Hardy, then a candidate for governor of Louisiana, that a bug had been found on the telephone line of campaign headquarters, a grand jury was convened to investigate possible violations of federal law. On October 9, Leland Denison, an officer of the Louisiana State Police, was asked to come to the Baton Rouge federal courthouse for a conference with an FBI agent concerning the bugging. When Denison arrived, however, he was met not with a conference but an immediate request by the FBI agent and the Assistant United States Attorney in charge of the case to testify before the grand jury. Denison agreed to appear before the grand jury and testified for about one-half hour. The United States Attorney warned Denison that he was a target of the grand jury investigation and that he had a right not to incriminate himself and a right to counsel. Denison then testified that he had received a tip that there was a bug on the telephone of the campaign headquarters of Paul Hardy. After consulting with a private investigator named George Davis, Denison's testimony continued, Denison located the bug and told the campaign staff what he had found. Denison also testified that the last time he had seen George Davis was in a chance meeting. Denison denied that he planted the bug himself, or that the campaign staff had procured its installation.

During his appearance the government did not challenge Denison's testimony. Immediately after he testified, however, the United States Attorney and the FBI agent led Denison to a room in the courthouse and

---

1. Section 1623(d), 18 U.S.C. § 1623(d) (1976), the recantation provision of the federal perjury statutes, allows a witness who testifies falsely to a court or a grand jury to correct his testimony without fear of prosecution under section 1623 if he does so before it has become manifest to him that the lie will be exposed and before his false testimony has substantially affected the grand jury proceedings.

2. The district judge's opinion is reported in *United States v. Denison*, 508 F.Supp. 659 (M.D.La.1981).

told him that he had just perjured himself before the grand jury. Denison denied the charge until the United States Attorney produced photographs of a meeting between Denison and George Davis at which the bugging was planned. After Denison saw the pictures, he reversed his denial and told quite a different tale than the one he had related to the grand jury. The United States Attorney then told Denison that he had no right to recant his grand jury testimony and cleanse himself of the perjury. Denison nevertheless gave the FBI agent his statement in writing and cooperated with him by making phone calls and having conversations that were tape recorded.

On October 10, Denison went before the grand jury again, this time testifying that after he had informed the campaign staff of the tip that a bug might be on the line, Guy Bellelo, a campaign staffer and Denison's brother-in-law, called him and asked if Denison "would be able to find anything on the line." Denison took this to mean that Bellelo wanted him to find a telephone tap. The reason for this, Denison assumed, was to generate publicity for Hardy's campaign. Denison then met with George Davis to ask him to place a bug on Hardy's campaign headquarters telephone. A few days later, Denison went to the campaign headquarters with Davis who installed the bug while Denison waited in the car. The discovery of the bug, allegedly planted by Hardy's opponents, led to a press release and publicity for Hardy's campaign. This story matched the version that Denison had told the United States Attorney privately, but differed significantly from the earlier version the grand jury had heard. Nearly one year later, Denison was indicted in five counts for making false declarations before

a grand jury in violation of 18 U.S.C. § 1623, part of the general criminal perjury statute.[3]

Denison made a pretrial motion to dismiss the indictment on grounds that the recantation statute, 18 U.S.C. § 1623(d),[4] prohibited his prosecution because he recanted his false testimony of October 9 and told the grand jury the truth on October 10. Alternatively, Denison argued that if he had not satisfied the recantation statute, it was because the prosecution had unfairly deprived him of his "right to recant." Finally, Denison alleged that § 1623(d) was unconstitutionally vague and ambiguous. The district court rejected these arguments and denied Denison's motion to dismiss. 508 F.Supp. 659. At trial, the court ruled that the availability of the recantation defense was a question of law to be resolved by the court, and refused to allow Denison to argue recantation to the jury. The jury acquitted Denison on three counts of the indictment, but found him guilty on two. This appeal followed.

## II. THE ISSUES

Denison raises five arguments on appeal. First, Denison argues that his testimony of October 10 satisfied the recantation statute because at that time, his October 9 testimony, though false, had not substantially affected the grand jury proceedings. Second, Denison renews his argument that the government unfairly deprived him of his statutory right to recant. Third, Denison argues that the recantation provision is unconstitutionally vague in permitting a prosecutor, in his discretion, to cut off a witness's right to recant. Fourth, Denison

---

3. Each count of the indictment presents a pair of statements, one drawn from Denison's October 9 testimony, one from Denison's October 10 testimony, and alleges that they are inconsistent to the extent that one of them is necessarily false. Section 1623(c) permits an indictment to allege that a witness has made two declarations that are "inconsistent to the degree that one of them is necessarily false" without specifying which declaration is false. Denison's indictment, however, did allege that his statements of October 9 were false.

4. Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.
18 U.S.C. § 1623(d) (1976).

urges us to find that the prosecutor's conduct in this case violated Denison's due process rights. Finally, Denison asserts that the district court erred in refusing to allow him to present the recantation defense to the jury. We shall consider each argument in turn.

### 1. The Requirement of Substantial Effect upon the Proceedings.

■ When Denison argued his motion to the trial court, this Circuit had not construed section 1623(d). The issue in construction is whether a witness must prove both that the perjury has not substantially affected the proceedings and the fact that the testimony was false is not manifest. The district court concluded that both these conditions must be met to gain the benefit of recantation. 508 F.Supp. at 664. The district court also found that the exposure of Denison's perjury was manifest to him when he recanted, and, therefore, the court did not reach the issue of substantial effect. *Id.* at 665.

The district court's interpretation was correct. Since its decision we have decided, *United States v. Scrimgeour*, 636 F.2d 1019 (5th Cir.) *cert. denied,* —— U.S. ——, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981), which holds that Congress intended to require a witness to prove compliance with both conditions before he may raise the recantation defense. *Id.* at 1021. *Accord, United States v. Moore*, 613 F.2d 1029 (D.C.Cir. 1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980). Thus, the district court properly held that if the exposure of Denison's perjury was manifest when he returned to the grand jury to tell the truth, the benefits of the recantation provision were unavailable to him.

Denison does not dispute, and in the face of the record could not dispute, that the exposure of his false testimony was mani-

fest to him when he took the grand jury chair for the second time. His only response is to argue that the falsity of a witness's testimony must be manifest to the *grand jury* before the opportunity to recant ceases. Denison's sole support for this assertion comes from *United States v. Mitchell*, 397 F.Supp. 166 (D.D.C.1974).[5]

■ In *Mitchell*, a defendant, Gordon Strachan, testified falsely before a grand jury on April 11. On April 16, the prosecutor advised Strachan that the investigation now aimed at him as well because of the testimony of others who had since gone before the grand jury. On April 18, Strachan told a new story to the prosecutors, which the court assumed was a recantation. The court held that the April 18 recantation did not bar prosecution because by then the grand jury had heard testimony that made manifest the falsity of Strachan's testimony. The court noted in dictum, however, that Strachan could have recanted on April 16, but had failed to do so. *Id.* at 176–77. From this dictum, Denison argues that the falsity of a witness's testimony must be made manifest to the grand jury to defeat a recantation defense. But this view is a perversion of the purpose of the condition in the recantation statute. The case law in this Circuit is to the contrary and is grounded in firm policy considerations. Instead, if it has become manifest to the *witness* that the falsity of his testimony has been or will be exposed, the time for recantation is over.

In *United States v. Scrimgeour, supra,* the district court had dismissed a perjury indictment against the defendant on recantation grounds after concluding that it had not become manifest to the defendant that his perjury had been exposed when he testified truthfully in his second grand jury appearance. We reversed because our analysis of the facts revealed that the defendant was well aware that his perjury had

<hr>

5. The convictions of several defendants in the *Mitchell* case were affirmed on appeal, *United States v. Haldeman*, 559 F.2d 31 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). The charges against Strachan, the defendant who raised the issue we address here, were later dropped, 559 F.2d at 51 n.4.

been exposed before he attempted to recant. *Id.* at 1024–25. The entire discussion in *Scrimgeour* focused on the defendant's, not the grand jury's, awareness of the exposure of his false testimony. At no point did we indicate that the defendant's right to recant depended in any way on the grand jury's knowledge. Our reasoning in *Scrimgeour*, therefore, forecloses any argument in this Circuit that a witness may recant at any time before the grand jury learns he lied.

It is in order to give a brief explanation of the policy considerations that dictate this result. The purpose of barring the prosecution of witnesses who recant is to promote the investigations of the grand jury or of the court.[6] There is little benefit to these investigations in permitting a witness to escape prosecution by recanting after it is clear to him that his perjury will be exposed. Such a rule would encourage a witness to testify falsely knowing he could always recant if evidence of his perjury comes to light. Congress did not intend to create so broad a shield when it passed § 1623(d). *See Scrimgeour, supra,* 636 F.2d at 1024 (holding that the recantation provision is to be construed narrowly). We conclude, therefore, that when it is manifest to a witness that his false testimony has been or will be exposed, he may no longer come under the shelter of the recantation provision. Because it was manifest to Denison when he attempted to recant that his perjury had been exposed, the district court correctly held that he had not recanted within the meaning of § 1623(d).

### 2. The Right to Recant.

■■■ Denison's second argument is that the United States Attorney improperly de-

feated Denison's recantation right by confronting him with evidence of his perjury before he could reflect on his false testimony and perhaps change it. This theory has its origins in *United States v. Del Toro,* 513 F.2d 656, 666 (2d Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).[7] In *Del Toro,* the Second Circuit rejected the argument that the prosecutor had unfairly cut off a defendant's recantation right, finding that the defendant in fact had an adequate opportunity to recant after the United States Attorney put him on notice that his testimony was suspect. The court, therefore, did not decide whether a defendant could ever prevail on the theory that a prosecutor improperly prevented recantation by exposure of a witness's false testimony to him. We do reach this question and hold that a witness has no right of recantation that requires a prosecutor to delay revealing incriminating evidence to the witness to allow him to reflect on his perjury.

Section 1623(d) changed the common law rule that recantation is not a defense to perjury.[8] The recantation defense, according to the legislative history, "serves as an inducement to the witness to give truthful testimony by permitting him voluntarily to correct a false statement without incurring the risk of prosecution [by] doing so." H.R. Rep.No.91–1549, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin. News 4007, 4024. The defense is not absolute, however: it is conditioned on the witness's belief that the falsity of his testimony has not been exposed when he recants. Denison would have us limit this condition to ensure that a witness who commits perjury always must have an opportunity to escape prosecution if he has a change of heart. We decline to do so. Such a holding

---

6. The recantation defense is available only to defendants charged under 18 U.S.C. § 1623, which applies to statements made under oath before a court or grand jury. Persons charged with perjury under 18 U.S.C. § 1621, which applies more generally to any statement made under oath, may not assert a recantation defense.

7. We noted in *Scrimgeour,* 636 F.2d at 1025 n.14, that the Second Circuit had been presented with this theory, but we did not at that time express any opinion on its merits.

8. *United States v. Norris,* 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808 (1937).

would expand the recantation defense far beyond the purpose it is designed to serve.

The sole purpose of the recantation defense is to encourage the discovery of truth in judicial and grand jury proceedings. *United States v. Moore, supra,* 613 F.2d at 1040; *United States v. Lardieri,* 506 F.2d 319, 324 (3d Cir. 1974). In this respect, the recantation defense simply ties in with the overall goal of the perjury statute. Congress used two different mechanisms in section 1623 to enhance the truthfulness of testimony at judicial and grand jury proceedings. *See United States v. Moore, supra,* 613 F.2d at 1041. Section 1623 deters perjury in the first instance by punishing it, and encourages the correction of false testimony by barring prosecution if a witness recants before he knows his lie will be exposed or before the proceeding has been substantially affected. *Id.*

Were we here to hold that the recantation provision entitles a witness to a period of reflection, even when the prosecutor has firm evidence that the witness has lied, we would weaken the deterrent effect of § 1623 without strengthening the objective of the statute: encouraging truthful testimony. On the contrary, the period of reflection Denison asks for can only hamper the government's investigation, while condoning a witness' lies at the outset since he or she would still have the chance to be absolved. We see no reason to force the government to stall its investigation simply to allow a witness to meditate on his lie. Nor do we read § 1623(d) to confer a boon on a witness indicted for perjury when the government exposes his perjury to him before he can recant. The recantation provision does not exist for the benefit of witnesses whose consciences might prod them to retract their lies.

Section 1623(d) balances the need to encourage a witness to correct his testimony against the need to prevent his perjury at the outset. We see no reason to disturb this balance by broadening the immunity accorded to a witness who recants at the expense of the deterrence accomplished by imposing criminal penalties on perjury. We hold, therefore, that the federal recantation statute does not entitle a witness to a period of reflection during which the prosecutor is precluded from challenging his testimony with evidence of its falsity.

### 3. The Constitutionality of § 1623(d).

■ Denison argues that because § 1623(d) contains no guidelines to a prosecutor telling him how long he must preserve a recantation defense, it is unconstitutionally vague. Initially, we note our puzzlement at the purpose of this argument, as an invalidation of the statute creating the recantation defense would hardly benefit a defendant prosecuted for perjury.[9] Nevertheless, the argument has no merit in light of our conclusion above that a witness has no right to any period of reflection.

### 4. Due Process Claim.

Denison urges us to find that the United States Attorney's conduct violated due process. In support of this argument, Denison asserts (1) that the United States Attorney and the FBI trapped him into testifying by luring him to the courthouse on the pretext of a conference, then asking him to testify before the grand jury; (2) that the government made manifest to Denison that he had perjured himself, thus thwarting Denison's recantation right; and (3) that the United States Attorney told him not to reveal that he was cooperating with the investigation until after he had testified before the grand jury again, thus depriving him of the right to obtain counsel. Denison has cited no case in support of this argument and we have discovered none. Whether we consider the individual or the

9. " 'If recantation is as limited a defense as Erlichman suggests, it can hardly be said to render the entire statute illegal, since Congress could surely have passed § 1623 without any recantation provision at all.' " *United States v. Mitchell,* 397 F.Supp. 166, 175 (D.D.C.1974), (rejecting a constitutional challenge to § 1623(d)).

composite effect of these alleged improprieties, we find his argument unpersuasive.

■ First, Denison was not unfairly required to testify. Because he was not under subpoena, his appearance before the grand jury was wholly voluntary. Moreover, he was warned of his rights before he actually testified. That the United States Attorney did not tell Denison beforehand that he would be asked to go before a grand jury does not offend due process. *Cf. United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977) (the government need not tell a grand jury witness that he is a potential defendant).

■ Second, Denison claims that the government treated him unfairly by disclosing evidence of his perjury to him before he had an opportunity to consider recanting. We hold above that there is no right of recantation preventing a prosecutor from immediately telling the witness of evidence of his perjury. This conclusion disposes of any contention that the United States Attorney acted unfairly here.

■ Finally, Denison claims that the prosecutor attempted to muzzle him, thus denying him due process by restricting his access to counsel. We cannot accept this argument. When Denison first went before the grand jury, the United States Attorney explicitly advised him of his right to counsel. This advice was repeated the next day when Denison went again before the grand jury. At no time did the United States Attorney or the FBI agent suggest to Denison that he not consult with an attorney. Looking at the record as a whole, we are persuaded that Denison had no reason to believe that the United States Attorney desired to restrict his access to counsel. Thus, we reject Denison's argument that his due process rights were violated.

*5. Recantation as a Question of Law.*

■ Denison argues that the district court went astray in refusing to allow him to argue the recantation defense to the jury. It is settled in this Circuit that the defense of recantation must be raised before trial under Federal Rule of Criminal Procedure 12(b)(2) as a jurisdictional bar to prosecution. *United States v. Parr,* 516 F.2d 458, 472 (5th Cir. 1975). Denison did raise his claim under this Rule, and the district judge, as we hold, properly ruled against him. Once rejected, the recantation issue may not be raised at trial and argued to the jury. The rule of *United States v. Norris,* 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808 (1937), that recantation is no defense to perjury still holds sway when a defendant does not come within the recantation provision of section 1623(d) and create a bar to prosecution.

## CONCLUSION

In summary, we hold that the district court properly denied Denison's motion to dismiss because the exposure of his perjury was manifest to him when he recanted his false testimony and testified truthfully on October 10. Further we conclude that Denison had no right to a period of reflection before being confronted with evidence of his initial perjury. We also hold that the recantation statute is not unconstitutionally vague, that Denison was not denied due process, and that there was no error in the district court's refusal to permit Denison to argue recantation to the jury. The judgment of conviction is

AFFIRMED.