**UNITED STATES of America**

v.

**Richard P. HERMAN, Appellant.**

**No. 79–1553.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 6, 1979.

Decided Feb. 12, 1980.

Richard H. Martin (argued), Baskin & Sears, Pittsburgh, Pa., for appellant.

Robert J. Cindrich, U.S. Atty., Frederick Thieman (argued), Jeffrey A. Manning, Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In 1976 Richard Herman, a former court magistrate in Allegheny County, Pennsyl-

vania, was indicted along with thirteen other individuals and charged with conspiring to accept bribes from a bail bonding firm, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961–1968. He was tried in January, 1978 and was found guilty; his conviction was affirmed on appeal. *United States v. Herman*, 589 F.2d 1191 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). At his trial Herman proposed to call as witnesses four constables who had worked in his office. He asserted that their testimony would show that he had not participated in the bribery scheme. When he attempted to call the constables all of them indicated that they would not testify, asserting the privilege against self-incrimination.

The statute of limitations on the constables' offenses has now expired. As a result, Herman has requested a second trial on the RICO offenses at which the constables will not be permitted to assert a fifth amendment privilege. Herman initiated this request with a motion for a new trial before the district court, pursuant to Rule 33, Fed.R.Crim.Proc.[1] The district court denied the motion. Herman has appealed on the ground that the district court abused its discretion by not holding an evidentiary hearing and on the ground that the district court should have granted the motion on the merits.

Herman's conviction grew out of a kick-back scheme run by Stephen C. Levitt, owner and operator of a bail bonding firm in Allegheny County. Levitt was the government's chief witness at Herman's trial. Earlier Levitt had pled guilty to a violation of 18 U.S.C. § 1962(d) (RICO). In our decision affirming his conviction on direct appeal we described Herman's involvement in the kick-back scheme.

Levitt testified that from February of 1970 through May of 1975 he operated a bail bond agency in Pittsburgh, Pennsylvania, writing surety bonds for persons charged with crimes throughout Western Pennsylvania. The principal and qualified surety for the agency was Stuyvesant Insurance Company, to whom Levitt was required to pay 2% of the face amount of each valid bond issued by the agency. Early in 1970 he made an arrangement with certain magistrates in Allegheny County to pay a kickback of 50% of the surety bond premium to magistrates who referred bail bond business to his newly established agency. When a defendant was referred to him by one of these magistrates, Levitt would usually post an invalid bond with the court. . . If the case was dismissed at the preliminary hearing he would split the gross premium with the magistrate. If the case was held for court he would deduct the cost of obtaining a valid power of attorney, and split the remainder of the premium. . . . Relying upon the Levitt Agency files, which listed individual bond transactions by date and name of defendant, Levitt illustrated how he had calculated the specific sums paid to Herman . . . on account of each bond. He further testified that on each such occasion he had placed the money in an envelope with [Herman's] name on it, and had either personally delivered the envelope to the magistrate or one of his employees, or directed that it be so delivered.

Victor Kozlowski, a former bailbondsman at the Levitt Agency, testified under a grant of immunity. He corroborated Levitt's testimony, and stated that at Levitt's direction he personally had deliv-

---

1. Rule 33, Fed.R.Crim.Proc. provides:

    The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

ered kickbacks to Herman . . . for cases in which he had written the bail bonds at their office. Mary Hupert, formerly a secretary at the Agency, also testified under an immunity grant. She stated that she had observed, and later prepared, envelopes directed to Herman . . . and that she had received phone calls from . . . magistrates and their staffs referring bail bond clients to the Levitt Agency. She further testified that she recalled an occasion on which Magistrate Herman's son had picked up a payment envelope at the Levitt Agency. . . .

Special Agent Marinaro of the FBI testified that during a lengthy interview with the FBI on February 25, 1976, Herman had admitted that he had sent his son to pick up an envelope containing several hundred dollars from the Levitt Agency as kickback payments on bonds written in cases heard before him.

*United States v. Herman*, 589 F.2d at 1194–95.

Herman's defense strategy was aimed at showing that the bribery conspiracy was carried on by members of his staff and that he had not participated in the kickback scheme.

At trial, Herman put on four witnesses. Three former constables in his office— James Regrut, Robert Williams, and William McHugh—testified that they had never split with Magistrate Herman any funds received from Levitt. . . . [McHugh asserted his fifth amendment rights when asked if he divided monies from Levitt with other constables.] Herman's secretary, Josephine Howe, testified that she had never made any referrals to bail bond agencies; that, to her knowledge, it was not Magistrate Herman's policy to make such referrals; and that, to her knowledge, Magistrate Herman had never taken any bribes or kickbacks in the performance of his duties.

*Id.* at 1199.

In addition, Herman proposed to call John Batkins, James Trosty, and Richard La Quinta, former constables in his office

and to cross-examine McHugh further. Relying on statements the four men had given to either the F.B.I. or the grand jury, he claimed their testimony would "establish that some payments from the Levitt Agency with respect to bail bond business originating out of Herman's office went to one or more of the constables, who split the money among themselves without passing any along to him." *Id.* As we noted above, they all refused to testify. The district court denied Herman's request to impose immunity on the constables; this denial was affirmed on appeal. *Id.* at 1200–04.

In his motion for a new trial, Herman seeks again to have an opportunity to cross-examine the constables.

The government argues that the constables' testimony cannot serve as a basis for the granting of Herman's new trial motion. As this court noted in *United States v. Iannelli*, 528 F.2d 1290 (3d Cir. 1976):

Generally five requirements must be met before a district court will order a new trial on the ground of newly discovered evidence:

(a) the evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. *United States v. Howell*, 240 F.2d 149, 159 (3d Cir. 1956). *Accord, United States v. Meyers*, 484 F.2d 113 (3d Cir. 1973); *United States v. Bertone*, 249 F.2d 156, 160 (3d Cir. 1957); *United States v. Nigro*, 253 F.2d 587 (3d Cir. 1958).

*Id.* at 1292–93.

We reaffirm these principles, but we are unable to apply them to the facts of this appeal because of the inadequacy of the record below. The original trial record is

voluminous. However, there is a paucity of documents relating to the new trial motion. There is no answer from the government; there is no transcript of a hearing, for none was held; and most importantly, there is no memorandum from the district court explaining its decision.

While we appreciate reasonable dispatch in disposing of protracted litigation, we do not believe that the judicial process would have been overburdened if the court had waited for the filing of an answer or if it had filed a memorandum. Indeed, we believe that, in this case, the positions of the parties should have been set forth in written documents.

The issue raised by Herman's appeal, the importance of the constables' testimony, is a close one and not readily resolved by a review of the trial record. Their testimony may be cumulative as the government contends. We note, however, that those who testified at the trial on behalf of Herman denied any involvement in the bail bond kickback scheme that formed the basis of Herman's indictment. In contrast, all of the constables who admitted, before the grand jury or before the FBI, any involvement with kickbacks did not testify because they claimed that such testimony might thereby incriminate them. Consistent with their previous statements, the second group of witnesses may testify at a new trial that they had indeed received money from the Levitt Agency, but had not split it with Herman. Thus, there is a possible difference between the statements of those who testified and those who did not. The district court may feel that the difference is important.

It is equally possible that the district court may decide that this distinction is without significance. None of the constables' statements indicated that they had any knowledge of whether Herman had or had not participated in the bribery scheme. Further, the court may decide that the testimony fails to meet the fifth requirement for granting a new trial, namely, that the new evidence would "probably produce an acquittal". However, none of these answers is self-evident.

Because of the interplay of the factual and legal issues raised in this motion, we need a clear and straightforward assessment of the question from the trial judge. We realize that the district judge may not have needed a fully developed record to make his decision, for he had presided over the trial and was familiar with the witnesses and the evidence submitted against Herman. It is significant that he had presided at the hearing at which the constables' rights to assert the fifth amendment privilege had been affirmed. However, to perform our function properly we must have a statement of reasons. We will therefore remand so that the district court can give us the benefit of its reasoning.

■ We do not hold that the district court erred by failing to have an evidentiary hearing. A hearing need not be held in every case, see *United States v. Iannelli*, 528 F.2d at 1294. First, Herman did not request a hearing. Second, and more importantly, a record on this question had been developed at trial when the witnesses invoked their privileges. The judge who ruled on Herman's new trial motion also presided at the trial, and Herman made no claim concerning the substance of the constables' testimony that he had not made earlier. Of course on remand the district court may consider anew the desirability of holding an evidentiary hearing.

If the district court concludes that the proffered testimony meets the five requirements set forth in *United States v. Iannelli*, it should also consider the question of whether testimony which was previously unavailable because of a witness' invocation of a fifth amendment right, can properly be deemed "newly discovered" under Rule 33. We do not reach this question at this point because the view of those who are closer to the trial process would be helpful in considering the answer to this "thorny" question. We leave it to the district court to address this issue in the first instance.

We will therefore vacate the order of the district court and will remand for further proceedings consistent with this opinion.