**John H. STORY, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

**No. 89-75.**

Supreme Court of Wyoming.

March 16, 1990.

Dick L. Kahl, Powell, Irvin B. Nodland (argued), and Thomas A. Dickson of Lundberg, Nodland, Shulz, Lervick & Tharaldson, P.C., Bismark, N.D., for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Sylvia Lee Hackl, Sr. Asst. Atty. Gen. (argued), and

Terrill Tharp, Big Horn County Prosecutor, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

This is an appeal from denial of a motion for new trial based on newly discovered evidence. Appellant John Story states the issues as:

1. "Has Dr. Story been deprived of his constitutional right to due process by the district court's refusal to permit disqualification?"

2. "Must it be held that Dr. Story was deprived of his constitutional right to due process when the district court refused hearing on the motion for new trial?"

3. "If the appellant was deprived of his right to due process and equal protection of the law when the district court denied the motion for new trial, was reversible error committed, for two independent reasons?"

4. "When given that Dr. Story was deprived of his fundamental right to a fair hearing on his motion for new trial, his right to due process and equal protection of the law, and to meaningful review of his constitutional claims, is the doctrine of cumulative-error properly invoked?"

We affirm.

## FACTS

The history of this case is chronicled in prior decisions of this court. In 1985, John Story, a physician, was convicted on six separate charges of sexually assaulting his patients. This court affirmed five of the six convictions in June 1986, in *Story v. State*, 721 P.2d 1020, 65 A.L.R.4th 1011 (Wyo.1986) (*Story I*). Appellant subsequently filed a motion for new trial based on newly discovered evidence pursuant to Rule 34, W.R.Cr.P. The basis for the motion was an affidavit which stated that WH, a prosecution witness at appellant's trial, lied in her trial testimony.

The district court denied the motion on procedural grounds and Story appealed. We reversed after determining that the

district court had erroneously construed Rule 34 and remanded for a disposition of the new trial motion on the merits. *See Story v. State*, 755 P.2d 228 (Wyo.1988) (*Story II*). The events following our decision in *Story II* led to this appeal.

The decision in *Story II* was issued by this court on May 23, 1988. On June 1, 1988, Story filed a motion for a "pre-hearing conference." The district court denied the motion, stating that such a conference was not required and indicating that the new trial motion would be determined without a hearing, as authorized by the majority of this court in *Story II*, 755 P.2d at 231. The district court also established a schedule which allowed Story until August 1, 1988, to submit any material that he wished to add to his motion for new trial, allowed the State until September 1 to respond, and then allowed Story until September 16 to file any rebuttal material.

On August 1, 1988, Story filed a motion to disqualify the district judge for cause, alleging that the district judge had engaged in improper ex parte communications with the prosecuting attorney and that the judge had become prejudiced and biased against Story after the trial had been concluded. He also filed various supporting affidavits and a brief in support of his motion for new trial. The State responded on August 25 to both motions, also filing supporting affidavits. On September 13, three days before the deadline to file rebuttal evidence, Story filed a "Notice of Taking Depositions" which identified two persons to be deposed on September 16 and requested production of all of WH's medical records. The medical records concerned treatment of WH by a Dr. Christensen, now deceased. Appellant alleged that the records would support his contention that she gave perjured testimony at trial.

The State responded by urging that the records were privileged and that there was no compliance with Rule 17, W.R.Cr.P. The district court suspended the depositions pending a hearing. On September 16, 1988, the district court held a hearing on the State's motion and concluded that Story had failed to comply with Rule 17, W.R.

Cr.P. because he had not filed with the court a timely motion to take depositions and had made no showing that the proposed deponents would be unable to attend or would be prevented from attending a trial or hearing.

On October 5, 1988, the court held a hearing on the motion to disqualify the presiding judge for cause. The motion to disqualify was denied. On the same day, Story filed a motion seeking an order to allow depositions of the same two people, plus three more people, including appellant's wife, Marilyn Story, and seeking an order to permit review of WH's medical records. The State objected. At a November 14 hearing on the motion, the records were produced and designated as State's Exhibit No. 1. The court allowed the defense 15 days to file any other material contradicting or supplementing State's Exhibit No. 1. Appellant then filed several affidavits concerning the custody, content, and interpretation of the handwriting contained in the records.

Finally, on February 1, 1989, the district court issued an opinion letter which denied the motion to take depositions and the motion for new trial. Orders reflecting these decisions were entered and Story appealed.

## DISQUALIFICATION

■ In order to evaluate appellant's claim that he was deprived of due process when the judge refused to disqualify himself, we begin with his motion to disqualify for cause and its supporting materials to determine what the judge had before him at the time the motion was decided. We do not consider the various assertions of fact in appellant's brief which are unsupported by citation to the record.

The motion was made pursuant to Rule 23(e), W.R.Cr.P.:

"**Disqualification for cause.**—Whenever the grounds for such motion become known, the state or the defendant may move for a change of district judge on the ground that the presiding judge is biased or prejudiced against the state, the prosecuting attorney, the defendant or his attorney. The motion shall be supported by an affidavit or affidavits of any person or persons stating sufficient facts to show the existence of such ground."

The motion for disqualification contained two separate allegations of bias. In pertinent part, the motion states:

"It is apparent from the record that Judge Hartman has engaged in ex-parte communications with the prosecuting attorney in this case. Such communications indicate a personal bias against Dr. Story. To avoid further appearance of impropriety, Judge Hartman should be disqualified.

"Judge Hartman should also be disqualified because extrajudicial communications between the Judge, jurors and friends of Dr. Story after the conclusion of the trial have caused him to be prejudiced and biased against Dr. Story."

Appellant first contends that the record demonstrates that there were ex parte communications between the judge and the prosecutor that indicate bias against appellant. Appellant's affidavit, filed in support of the disqualification motion, attached newspaper articles which, according to appellant, show that the prosecuting attorney had engaged in improper ex parte communications with the judge because he knew of the court's ruling on the new trial motion before the judge had decided the motion. The news articles stated in part as follows:

"BASIN, Wyo.—A motion seeking a new trial for convicted rapist Dr. John Story has been denied, according to Big Horn County Attorney Terry Tharp.

\* \* \* \* \* \*

"Tharp said the motion was automatically denied because the defense attorney didn't ask for a determination within 10 days after it was filed. According to Wyoming law, an attorney filing a motion for a new trial must notify the court and ask for a determination. Since no determination was sought within that time, *the motion should therefore be denied, Tharp wrote* in a response to the motion." (emphasis added)

Howard, *Story won't get retrial,* Billings Gazette, Aug. 19, 1987.

"A motion seeking a new trial for Dr. John Story of Lovell has apparently failed because documents requesting a hearing in the matter were never filed.

\* \* \* \* \* \*

"Tharp said no formal order denying the motion was ever signed by Judge Gary Hartman or any other District Court judge, but as the statute reads, the motion was 'deemed denied.'

\* \* \* \* \* \*

"Reached in Worland Wednesday, Judge Hartman confirmed that he has taken no action granting or denying a motion for a new trial. He also confirmed that the statutes state that the party filing a motion must notify the court about the pending motion and 'call up the motion' or file a 'request for setting.' "

Peck, *Story new trial motion fails,* Lovell Chronicle, Aug. 20, 1987.

The news articles can be read to infer that the prosecutor knew what the judge would rule, was predicting what the judge would rule, or was articulating his position. The articles do not establish that the prosecutor conferred with the judge ex parte and appellant made no attempt to establish this contention by statement of the judge, the prosecutor, or the news reporters. While appellant infers that these articles demonstrate that the prosecutor and the judge had been secretly conferring, a fair reading of the articles reveals that the prosecutor was merely articulating the State's position on appellant's motion. The State's position was hardly secret, as it had already been laid out in the "Response and Motion to Strike" filed by the prosecutor over a month earlier. The court later adopted that position in denying appellant's motion on procedural grounds. While this court later reversed that decision in *Story II,* a showing that the district court denied one of appellant's motions is not evidence of improper ex parte communications.

Appellant's affidavit also states that he filed a motion for a "pre-hearing conference" that was denied by the court before appellant had a chance to respond to the State's response to his motion. There is nothing in the record that indicates any ex parte communication took place with respect to this motion.

It is not, as appellant claims, "apparent from the record" that improper ex parte communications took place. Appellant's claim of ex parte communications is based not on facts, but is rather a speculative inference he draws solely from news articles, unconfirmed as to source and facts, and the fact that his motions were denied. This inference appears to be based on an assumption that the only possible reason for denial of appellant's motions is that the judge had been influenced by ex parte communications. Repetition of this claim, regardless of how stridently or frequently repeated, does not transform it into a fact. When we disregard the news articles, as we must, as being without foundation and not under oath, appellant's argument, stated succinctly, is this: A judge's denial of a party's motion proves that the judge secretly conspired with the prosecutor, therefore the judge is biased and must disqualify himself upon request of that party. This argument is without merit.

Appellant's second allegation of bias is that the judge's communications with the jurors and appellant's friends after the trial was over demonstrates his prejudice and bias. This contention is supported by the affidavit of Janice Hillman, who describes herself as a member of the "Dr. Story Defense Committee." In her affidavit, Ms. Hillman states that she interviewed one of the jurors approximately two years after the conclusion of the trial and that the juror had showed her a letter from the judge which told the jurors they did not have to cooperate with any post-trial investigation. The letter referred to in the Hillman affidavit merely informed jurors of the instruction contained in Rule 702, Uniform Rules for the District Courts, concerning interrogation of jurors and concluded with the following:

"As you may or may not recall, at the conclusion of the case approximately two years ago I advised you of District Court

Rule No. 702 which is set forth below. That Rule is:

" 'You have completed your duties and are discharged. Whether you talk to the attorneys or others is your own decision. It is proper for the attorneys to discuss the case with you and you may talk with them, but you need not. If anyone persists in discussing the case over your objection or becomes critical of your service, please report it to me.'

"I understand that some persons have been attempting to contact members of the jury to solicit comments and/or requests from them. The above rule is designed to protect you in the event that you do not wish to discuss the deliberations or your verdict with them. If there are any abuses of this rule and someone persists in asking you questions when you have no desire to talk to them, please report this to me at once."

Ms. Hillman also states that she had a post-trial telephone conversation (May 1987) and correspondence with Judge Hartman in which, in her opinion, "he expressed feelings of bias and prejudice against Dr. Story." She provides no details of the substance of either the telephone conversation or the correspondence, and it is therefore impossible to determine whether her opinion has any rational basis.

Rule 23, W.R.Cr.P., does not confer upon appellant the right to disqualify successive judges until he finds one that will grant his motions. The rule requires that appellant state facts that would convince a reasonable person with knowledge of all the facts that the judge harbors a personal bias or prejudice against appellant. *Hopkinson v. State*, 679 P.2d 1008, 1032 (Wyo.1984) (*Hopkinson III*). As discussed previously, appellant states no facts which support his contention of improper ex parte communications. Similarly, we do not find facts in Ms. Hillman's affidavit that would convince a reasonable person that the judge is personally biased against appellant. Her stated opinion is not such a fact, and the letter to the jurors does not support her claim. Perhaps in recognition of this, appellant asks that we revise the disqualification rule to allow the appearance of partiality to be sufficient for disqualification. The rule may not be revised in this fashion, but if it were, it would not be helpful to appellant for we do not perceive even an appearance of impropriety.

We agree that an impartial judge is an element of due process, but it takes more than a showing of unfavorable rulings on motions and statements of opinion by a witness to demonstrate bias or prejudice. Appellant was not deprived of due process by the denial of his disqualification motion.

## NEED FOR HEARING

Appellant contends in his second argument that the district court's refusal to hold a hearing on his new trial motion deprived him of his constitutional right to due process. We have held that the decision on whether to grant a evidentiary hearing on a motion for new trial is within the discretion of the trial court. *Story v. State*, 755 P.2d 228, 231 (Wyo.1988). The federal courts are in complete accord. *United States v. Wright*, 625 F.2d 1017 (1st Cir.1980); *United States v. DiPaolo*, 835 F.2d 46 (2nd Cir.1987); *United States v. Herman*, 614 F.2d 369 (3rd Cir.1980); *United States v. Molovinsky*, 688 F.2d 243 (4th Cir.1982); *United States v. Chagra*, 735 F.2d 870 (5th Cir.1984); *United States v. O'Dell*, 805 F.2d 637 (6th Cir.1986); *United States v. Hedman*, 655 F.2d 813 (7th Cir.1981); *United States v. Bednar*, 776 F.2d 236 (8th Cir.1985); *United States v. Nace*, 561 F.2d 763 (9th Cir.1977); *United States v. Bradshaw*, 787 F.2d 1385 (10th Cir.1986); *United States v. Slocum*, 708 F.2d 587 (11th Cir.1983); *United States v. Kearney*, 682 F.2d 214, 220 U.S.App.D.C. 379 (D.C.Cir.1982). The standard of review of such a decision is whether the district court abused its discretion in deciding the motion without an evidentiary hearing. Appellant seeks to avoid the abuse of discretion standard by claiming that due process requires an evidentiary hearing.

■ Appellant presents no cogent argument nor citation of authority to support his proposition that due process always requires an evidentiary hearing on a motion

for new trial. The only authority cited which discusses due process is *Twining v. New Jersey*, 211 U.S. 78, 110–11, 29 S.Ct. 14, 24, 53 L.Ed. 97 (1908), which is quoted for the proposition that due process requires notice and opportunity for a hearing. The case contains no reference to a motion for new trial, but is a description of general "principles which must be observed in the *trial* of criminal and civil causes." (emphasis added) *Twining*, 211 U.S. at 110, 29 S.Ct. at 24. We are unable to discern from this case a procedural due process requirement for a hearing on all motions for new trial.

■ Appellant then seems to address the abuse of discretion standard, arguing that *fundamental fairness* required an evidentiary hearing under the specific facts of his case. He claims that the court unfairly allowed the State to put on live testimony in opposition to his motion for new trial, while he was denied the opportunity to present live witnesses. The record does not support appellant's assertions.

The testimony that appellant complains of is the testimony at the hearing on *his motion to take depositions.* At that hearing, counsel for appellant stated that the purpose of the motion was to procure evidence of WH's medical records to support appellant's new trial motion. He stated that other defense counsel had seen an "abstract" of WH's medical records and that the abstract indicated that an examination of the actual records would establish that WH did have an IUD inserted, thus supporting the appellant's claim that she had perjured herself at trial.

Counsel for the State argued that the depositions were unnecessary because WH had agreed to release the records for examination. WH then testified and consented to release the records, which were introduced as State's Exhibit No. 1. The testimony elicited by counsel for the State was concerned solely with foundation for the introduction of the records. The only testimony even remotely connected with the subject matter of appellant's new trial motion was in response to the following questions by *appellant's* counsel:

"Q. [WH] have you ever had an IUD?

"A. No.

"Q. Never.

"A. Never."

The court then called Marilyn Story, who happened to be in the courtroom, as a witness. She was listed by appellant as a potential deponent "to testify concerning her examination of the medical records of [WH]." The court questioned Mrs. Story on the very topic that appellant sought to preserve by deposition. Appellant now takes exception to this procedure, alleging that it was unfair for the court to do so because it came as a surprise to his counsel and that the court was acting as an advocate rather than as a neutral body. While counsel may have been surprised by the court's decision to call Mrs. Story, he had the opportunity to object and said:

"Your Honor, the only objection I would have is that she is not a Defendant in this case. If the only purpose is to present the, to determine how the records, or where the records were located and what happened to them, we would gladly provide that information."

Mrs. Story testified that she had been provided access to the records of WH by a doctor who had acquired the records after the death of Dr. Christensen. When asked if she had the consent of WH to review the records, Mrs. Story replied "No, I didn't. She did not know. She waived her chance to consent when she committed perjury."

Following the examination by the court, both counsel were allowed to cross-examine the witness. While Mrs. Story's testimony in open court may have differed from the testimony appellant hoped to obtain by deposition, we fail to see why appellant now complains of the inclusion on the record of testimony he was seeking to obtain by deposition. The State did not, in fact, present any testimony which might logically be considered as opposing his motion for new trial. Appellant's claim that the State was unfairly allowed to present "surprise" witnesses in opposition to his motion for new trial is simply not supported by the record.

We are left with the question of whether the trial judge abused his discretion by receiving evidence at the deposition motion hearing but declining to hold a further evidentiary hearing prior to determination of the new trial motion. Here, *appellant* is asserting that he has newly discovered evidence which is so material that a new trial would produce a different verdict. He argues that a hearing is needed because otherwise the trial court "cannot, empirically, have the faintest knowledge whether or why the prosecution's witnesses committed perjury." From this statement, it appears that appellant contends that his newly discovered evidence is of such a nature that appellant is unable to present it to the court without an evidentiary hearing.

However, appellant does not identify this evidence, nor does he explain why it cannot be presented to the court without a hearing. The evidence he did present was that WH committed perjury when she testified that she had never had an IUD inserted. The basis for the contention was the WH medical records and an affidavit signed by Parthena Thompson, who states that she knew that WH's testimony was false because WH had told her that she had an IUD inserted. Appellant also relies on a fragment of a sentence found in the medical records produced at the deposition motion hearing. The excerpt is a handwritten entry which, according to affidavits filed by appellant, reads "27 Feb. 73 to exc–5 Mar 73 doing okay—to hyst or re-insert IUD." Appellant argues that his evidence "clearly proves that [WH] perjured herself." Appellant contends that if this evidence had been admitted at trial, he would have been acquitted on all counts.

Appellant does not identify other "newly discovered evidence" which would require an evidentiary hearing. While he lists a few witnesses which he would call if a hearing was held, he does not provide any clues as to the substance of their testimony nor does he explain why such testimony could not be presented by affidavit. He urges that a hearing is needed so that he may engage what Wigmore called "the greatest legal engine ever invented for the discovery of truth"—the process of cross-examination. 5 J. Wigmore, Evidence § 1367, p. 32 (Chadbourn Rev.1974).

Recitation of legal aphorisms is merely an academic exercise unless accompanied by application to facts, and appellant does not identify the person he wants to cross-examine or the evidence to be produced. Presumably it is WH, the witness he now accuses of perjury. WH has consistently reaffirmed the truth of her trial testimony by affidavit and her testimony when questioned by appellant's counsel at the deposition motion hearing. While appellant may entertain hopes for a dramatic recantation of her trial testimony under probing cross-examination, the likelihood seems remote. Appellant's bare hope of such a result is not enough to require a hearing.

It appears that appellant is not seeking a hearing in order to introduce newly discovered evidence, but rather in hopes of discovering evidence to support his motion. A trial court is not required to sponsor a fishing trip in the guise of an evidentiary hearing. Due process does not require multiple opportunities to cross-examine one of the prosecution witnesses on a subject that was at issue during the original trial.

Interestingly, appellant does not raise as an issue the merits of the actual denial of his motion for new trial, preferring to focus his argument on a due process requirement of a hearing. While the State did address the merits of the denial of the motion in its brief, in appellant's reply brief he specifically states that he is seeking only "an impartial tribunal and an evidentiary hearing," and asks that we "chastise" the State for introducing irrelevant matter. It is clear from this record that there was before the court all the newly discovered evidence appellant had identified; that the court did not abuse its discretion in deciding the motion without another hearing; and that the question raised concerning WH's credibility was not of such significance as would likely have made a difference in appellant's five convictions of sexually assaulting his patients.

## PROCEDURAL DEFECTS

Appellant's third argument is that the order denying his motion for new trial is

defective under Rule 34, W.R.Cr.P., as amended after appellant's new trial motion was filed. Discussion of this argument requires a brief review of the procedural history of this case. Appellant filed his motion for new trial based on newly discovered evidence on June 18, 1987. On September 2, 1987, the district court filed an order denying the motion on the basis that Rule 34, W.R.Cr.P., provided that a motion that was not determined within ten days of the date of filing was "deemed denied." On appeal from that denial, we determined that Rule 34 was ambiguous concerning the denial of motions based on newly discovered evidence and held that the "deemed denied" provision was inapplicable to such motions. *Story II,* 755 P.2d at 231–32. We reversed the order denying the motion and remanded for determination on the merits. *Story II,* 755 P.2d at 232.

Following remand, the district court established the schedule mentioned earlier to allow appellant to file any additional affidavits or briefing in support of his motion, with the final deadline for appellant's rebuttal to be September 16, 1988. Due in part to hearings on appellant's subsequent motions to disqualify the judge and motions to take depositions to support the new trial motion, the court extended the time for appellant to file additional material until November 29, 1988. The court took the matter under advisement and filed its decision letter on February 1, 1989. The order reflecting the denial of the new trial motion was filed on February 27, 1989.

■ Meanwhile, this court had published an amended version of Rule 34, W.R.Cr.P., on September 21, 1988, which became effective December 13, 1988. Appellant contends his motion should be determined pursuant to the amended rule because the effective date of the rule was prior to the filing of the order denying the motion.

Amended Rule 34 does not apply to motions filed before its effective date. The relevant provisions of the amended rule are:

"(b) * * * A motion for new trial based on the ground of newly discovered evidence shall be heard and determined and

a dispositive order entered within thirty (30) days after the motion is filed unless, within that time, the determination is continued by order of the court, but no continuance shall extend the time to a day more than sixty (60) days from the date that the original motion was filed. When disposition of a motion for new trial based on newly discovered evidence is made without hearing, the order shall include a statement of the reason for determination without hearing."

Appellant argues that the order denying his motion for new trial is "timely barred" because it was not entered within 30 days of the filing of his motion. The argument illustrates its flaw. It would be impossible to comply with the time limits of the amended rule for any motion, like appellant's, that was filed prior to the publication of the rule. We will not construe a rule to require an impossible result.

Appellant, nevertheless, asserts that the failure to satisfy the time limitation of Rule 34 and to include a statement of reasons for determining the motion without a hearing violated his constitutional rights to procedural due process and equal protection. Like his due process argument in relation to holding a hearing on a new trial motion, no relevant authority is cited to support these conclusions.

With regard to equal protection, appellant states only his conclusion that the action by the court deprived him of equal protection. He makes no attempt to establish the "invidious discrimination" which is the gravamen of an equal protection violation. *Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). Therefore, we will not consider these claims further.

### CUMULATIVE ERROR

Appellant's fourth argument is that he was deprived of a fair hearing, due process, equal protection, and meaningful review of his constitutional claims. In addition to the errors he alleges in his brief, he maintains that significant errors occurred during his original trial, and that the cumulative effect of the errors is such that his convic-

tions should be reversed. He does not identify these errors because the "full and complete list * * * is simply too voluminous" but takes comfort in the assertion that "[u]pon a reading of the transcript, such errors are obvious * * *."

Insofar as appellant is asking that we review the proceedings at his trial, we have already done so in detail. *Story v. State*, 721 P.2d 1020 (Wyo.1986). We do not find reversible error in the present appeal. We must, therefore, decline appellant's invitation to reverse his convictions based on the "cumulative effect" of phantom errors.

Affirmed.

URBIGKIT, Justice, dissenting, with whom MACY, Justice, joins.

I would require an evidentiary hearing when a motion for new trial is accompanied by an affidavit alleging a principal prosecution witness committed perjury. When we keep in mind the human pain occasioned by perjury [1] and the fact that someone's interest in liberty or life is at stake, it is not a lot to ask that a neutral judge listen to "live testimony, where the facts will be established before the decision on a motion for new trial based on newly discovered evidence is made." *Story v. State*, 755 P.2d 228, 232 (Wyo.1988), Urbigkit, J., specially concurring.

The majority ignores *Best v. State*, 769 P.2d 385, 389 (Wyo.1989). There we said "[a] court may deny a motion for new trial without a hearing *when all that is necessary for disposition is already on the record.*" · *Id.* at 389 (emphasis added). A hearing becomes necessary under *Best* when disposition of a motion for new trial cannot be made from the record. So it remains unexplained by the majority how an allegation of perjury can be examined simply by reference to a record.

In this case, the trial judge seemed quite reassured that a principal prosecution witness had not perjured herself after both the prosecutor [2] and the prosecution witness, Wanda Hammond, simply reassured him that there had been no perjury. The trial judge then thought it unnecessary to hear live testimony from Wanda Hammond's sister-in-law who had signed an affidavit claiming Wanda Hammond lied at trial. This is adjudication in the face of ignorance. "A standard should be established for the circumstance * * *, that a court is not required to grant a new trial on affidavit evidence, but when there is reasonable evidence of material perjury, the trial court should hold an evidentiary hearing." *Keser v. State*, 737 P.2d 756, 762 (Wyo.1987). I would require an evidentiary hearing be held when there is an allegation made that a principal prosecution witness lied at trial. "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. State of*

---

1. Perjury is a wrong done to the judicial system and the administration of justice for which punishment should be provided.

    "Perjury is an obstruction of justice; its perpetration may well affect the dearest concerns of the parties before a tribunal." *United States v. Norris*, 1937, 300 U.S. 564, 574, 57 S.Ct. 535, 539, 81 L.Ed. 808. Without truthful testimony, the court system cannot function. For that reason, a court cannot accept the threats as a compulsion to lie under oath and a court will use all its force to protect the one threatened.

    *Edwards v. State*, 577 P.2d 1380, 1384 (Wyo. 1978).

    "*In one-third of the cases [in the conviction of innocent people], the erroneous witness testimony was in fact perjured.*" Bedau & Radelet, *Miscarriages of Justice in Potentially Capital Cases*, 40 Stan.L.Rev. 21, 60 (1987) (emphasis added).

2. Earlier in the year, that trial judge wrote a letter which stated:

    I have on this date received some communication from Terry Tharp [the prosecutor] concerning my request. The essence of his letter is that he interviewed Wanda Hammond after John Story filed his Motion for New Trial. At the interview, Mr. Tharp reports that Wanda Hammond reiterated her trial testimony and that she stood by it and that she had never used an IUD nor had anyone ever inserted such a device in her.

    It certainly appears to me that Mr. Tharp has looked into the allegation and therefore, since he has acted, I cannot and will not act to call a special prosecutor to look into these so-called allegations. I hope this lays this matter to rest.

*Maryland,* 373 U.S. 83, 89, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Asking a prosecution witness if she lied, feeling reassured when she said she did not lie and failing to hear any testimony to the contrary is not treating the accused fairly.

Wanda Hammond testified at trial that Dr. John Story had sexually assaulted her. Dr. Story claimed he had not sexually assaulted her but had inserted an IUD into Wanda Hammond. Wanda Hammond claimed she never had an IUD. The jury convicted Dr. Story, obviously believing Wanda Hammond's version of events. After that conviction, Dr. Story's attorneys moved for a new trial on the basis of newly discovered evidence when Wanda Hammond's sister-in-law came forward with an affidavit that Wanda Hammond had indeed had an IUD and had perjured herself at trial. That affidavit stated in pertinent part:

> 3. That Affiant [Parthena Thompson] knows of her own knowledge that Wanda Hammond was allergic to birth control pills and because of the allergy did in fact have an IUD placed in her by Dr. John H. Story.
>
> * * * * * *
>
> 5. That Affiant and Wanda Hammond discussed more than once Wanda Hammond's IUD and the fact that Affiant did not need an IUD because Affiant had a hysterectomy performed on her and Wanda Hammond told Affiant that Dr. Story inserted the IUD in her.
>
> 6. That Affiant knows of her own knowledge that after Wanda Hammond quit going to Dr. Story, she went to Dr. Ray Christensen of Powell, Wyoming, as her physician and that Dr. Christensen performed a hysterectomy on Wanda Hammond after Dr. Story had placed the IUD in her * * *.

Had the jury been presented testimony from Wanda Hammond's sister-in-law that Wanda Hammond had worn an IUD and her testimony to the contrary was perjured, it is reasonable to suspect Dr. Story may have been found not guilty of sexually assaulting her. The trial judge, however, thought it unnecessary to have an evidentiary hearing on the motion for new trial before disposing of the motion. After reassurance from the prosecutor and the prosecution witness that there had been no perjury, and after refusing to hear any testimony to the contrary, the trial judge could see no need for an evidentiary hearing. In his decision letter denying the motion for new trial with no evidentiary hearing, the trial judge stated "[t]hose words 'to hyst—or reinsert IUD' [3] is the basis for the Defendant's contention that Wanda Hammond committed perjury." The first mistake by the trial judge occurred when he failed to understand it was the affidavit from Parthena Thompson which accompanied the motion for new trial and which formed the basis for the contention that Wanda Hammond committed perjury. The trial judge made no mention of the affidavit. He reasoned that those few words, "to hyst—or reinsert IUD," "when balanced against the affidavits of and present testimony of Wanda Hammond that she reaffirmed her original statement and that she never had an IUD falls short of convincing [the judge] of evidence so material that [the evidence] would produce a different verdict upon retrial." This second mistake made by the trial judge is even more basic. He confused the standard for granting a motion for a new trial with the standard for granting an evidentiary hearing before deciding whether to grant a new trial. Under *Best,* 769 P.2d 385, an evidentiary hearing need not occur when all that is necessary for disposition is in the record. The corollary is that an evidentiary hearing needs to occur when all that is necessary for disposition is not in the record. An allegation of perjury is precisely the kind of issue which cannot be decided on the record.

Having examined the particular structure of the argument advanced by the majority to support the notion that an evidentiary hearing is not required in this instance, I remain completely unconvinced. I

---

**3.** These words were attributed to Wanda Hammond's medical records in the office of Dr. Christensen, a physician who had attended Wanda Hammond after Dr. Story.

do not find federal case law, nor the rationale which underpins it, to be compelling authority for Wyoming state law. The federal circuit cases cited by the majority deal more with suspicious recantations than any allegations of perjury. Beyond that, federal cases are controlled by F.R.Cr.P. 33—rules which cannot govern Wyoming criminal procedure. If we cite federal law to persuade, we should explain why the federal approach should prevail when the Supremacy Clause to the United States Constitution is not in operation.

*Story*, 755 P.2d at 231, the Wyoming case cited in support of the holding, relies on *Hopkinson v. State*, 679 P.2d 1008, 1022 (Wyo.), *cert. denied* 469 U.S. 873, 105 S.Ct. 228, 83 L.Ed.2d 157 (1984). *Hopkinson*, in what appears but a strictly result-oriented approach, relies on *United States v. Johnson*, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562, *reh'g denied* 327 U.S. 817, 66 S.Ct. 699, 90 L.Ed. 1040 (1946), which simply addresses the standard of review for federal appellate courts reviewing the disposition by a trial court of a motion for new trial. *Johnson* has nothing to do with the need for an evidentiary hearing. I would not continue the effect of the faulty application of federal law in *Hopkinson* by reviving it through *Story II* and now *Story III*.

The solution adopted by other states seems better and concerns the necessity of an evidentiary hearing either when substantial issues are raised or when the allegations cannot be determined from the trial record. The Massachusetts and Minnesota courts appear to use the "substantially significant issue" approach,[4] while courts in

Texas require an evidentiary hearing when the credibility of the allegations cannot be determined by the record. "[A] hearing on a motion for new trial is mandated when an affidavit attacking the verdict *on any matter outside the record* itself is sufficient to give the trial court notice that reasonable grounds exist for disturbing its verdict." *Fielding v. State*, 719 S.W.2d 361, 364 (Tex.App.1986) (emphasis added). The Texas courts reason:

> Without doubt, the hearing on a motion for new trial is a critical stage of the proceedings. It is the only opportunity to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review.

*Owens v. State*, 763 S.W.2d 489, 492 (Tex. App.1988).[5]

This need for an evidentiary hearing, when an attack on the verdict comes to matters outside the record, is essentially the same approach we adopted in *Best*, 769 P.2d 385, where we indicated a hearing should be held when all that is necessary for disposition is not on the record. Because we ignore the precedent of *Best* and set the stage for unbridled discretion of a trial judge to dispense with an evidentiary hearing in the face of alleged perjury, I dissent.

---

**4.** *See Com. v. Boutwell*, 21 Mass.App. 201, 486 N.E.2d 77, 81 (1985) and *State v. King*, 414 N.W.2d 214, 221 (Minn.App.1987).

**5.** "When a motion for new trial and supporting affidavits attack a verdict *on a matter outside the record*, if the matters alleged give notice that reasonable grounds exist for disturbing the verdict, a hearing is mandatory." *Webb v. State*, 757 S.W.2d 830, 831 (Tex.App.1988) (emphasis added). "Having presented to the trial court a timely verified motion for a new trial raising

*matters extrinsic to the record*, appellant was entitled to an evidentiary hearing." *Haight v. State*, 772 S.W.2d 159, 161 (Tex.App.1989) (emphasis added). "When a party presents to the trial court a timely, verified motion for new trial which raises *matters extrinsic to the record*, the trial court abuses its discretion in denying a hearing on the motion." *McMillan v. State*, 769 S.W.2d 675, 676 (Tex.App.1989) (emphasis added).